**PUFFER'S HARDWARE, INC., d/b/a
Beacon Hardware, Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of
Labor, Respondent.**

No. 83–1863.

United States Court of Appeals,
First Circuit.

Argued June 4, 1984.

Decided Aug. 20, 1984.

Mary K. Ryan, Boston, Mass., with whom Alan D. Rose, Patricia A. Diamond, and Nutter, McClennen & Fish, Boston, Mass., were on brief, for petitioner.

Laura V. Fargas, Atty., Washington, D.C., with whom Francis X. Lilly, Sol. of Labor, Frank A. White, Associate Sol., Washington, D.C., for Occupational Safety and Health, Dennis K. Kade, Washington, D.C., Counsel for Appellate Litigation, and Judith N. Macaluso, Asst. Counsel for Appellate Litigation, U.S. Dept. of Justice, Arlington, Va., were on brief, for respondent.

Before CAMPBELL, Chief Judge, STEWART,[*] Associate Justice (Retired), and BOWNES, Circuit Judge.

STEWART, Justice (Retired).

The general duty clause of the Occupational Safety and Health Act, 29 U.S.C.

---

[*] Of the Supreme Court of the United States, sitting by designation.

§ 654(a)(1), provides that "[e]ach employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." In this case, the Occupational Health and Safety Review Commission (Commission) held that Puffer's Hardware, Inc., d/b/a Beacon Hardware (Beacon) had committed a "serious violation" of that provision because of the hazardous condition of its elevator.[1] Beacon seeks review of the Commission's order.

## I

Beacon is a small hardware store located in Boston, Massachusetts. At the rear of the store there is a freight elevator. In assessing the dangers created by this elevator, two facts are particularly important. First, the elevator, which is of the "shipper rope" variety, has two open sides—the front and the back.[2] Second, although metal doors on each floor enclosed the elevator shaft, these doors had to be opened in order to call the elevator, and thus, when Puffer's employees used the elevator, these doors did not protect them from falling into the elevator shaft. Once these doors were opened, only a wooden bar at approximately chest level stood between the employees and the open shaft.

On December 27, 1982, a Beacon employee was fatally injured when he was crushed between the floor of the elevator and the wall of the elevator shaft. Shortly there-after the Occupational Safety and Health Administration (OSHA) learned of the employee's death and sent a compliance officer to inspect the elevator. Following the inspection, OSHA issued two citations for violations of the general duty clause. 29 U.S.C. § 654(a)(1).

The citations alleged that Beacon had failed to furnish its employees with a sufficiently safe workplace because the elevator exposed employees to the possibility of falling into the elevator shaft and to the possibility of being crushed between the elevator and the elevator shaft.[3] The citations stated that a feasible method of eliminating these hazards was to install electronically interlocked gates on the elevator and on the openings to the shaft. These devices would prevent the elevator from moving unless all gates were closed, and prevent the gates from opening unless the elevator was in the landing zone.

Beacon contested the citation, and a hearing was held before an administrative law judge. The ALJ found that the elevator presented a "recognized hazard" within the meaning of the general duty clause because "the hazards presented by [Beacon's] elevator—crushing or broken bones—were obvious and [Beacon] was aware of them." Typescript op. at 7. In addition, he found that interlocking door and landing gates were feasible means of abating the hazards presented by the elevator. Although Beacon contended that its compliance with applicable state law provided a complete defense to the alleged

---

1. A violation of the general duty clause is serious "if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(j).

2. The term "shipper rope" derives from the cables or "pull ropes" that must be pulled to operate the elevator. Thus, to call the elevator at Beacon, an employee had to reach inside the shaft and pull a cable. This triggered a motor that pulled the elevator to the appropriate floor.

Similarly, once on the elevator, an employee had to pull the cable to operate the elevator.

3. OSHA's compliance officer explained the crushing hazard presented by the elevator in the following manner: "There is a crushing hazard to anyone riding on the elevator or attempting to get on and off the elevator in that there is nothing to prevent the person from becoming caught between the rising elevator floor and any fixed projections in the hoistway or the top of the hoistway opening, or in this particular case, since the elevator had two open sides, there is also a crushing hazard on the wall side of the elevator between the elevator floor and the window openings."

violation, the ALJ rejected this argument, finding that the Occupational Safety and Health Act preempted local regulation. Finally, the ALJ found that the violation was serious within the meaning of 29 U.S.C. § 666(j).[4]

Beacon's petition for discretionary review was denied by the Commission and, as a result, the ALJ's report became a final order of the Commission. *See* 29 U.S.C. § 661(i). Beacon thereafter filed a petition for review in this court.

## II

At the outset, we are met by Beacon's contention that the ALJ erred in finding that the Massachusetts statute applicable to Beacon's elevator is preempted by the Occupational Safety and Health Act. Although we agree with Beacon that the Massachusetts statute is not preempted, we conclude that this does not require us to reverse the ALJ's decision. Our exploration of this question begins with a description of the relevant Massachusetts statutes.

Under Massachusetts law, elevator regulations are promulgated by the Massachusetts Board of Elevator Regulations. *See* Mass.Gen. Laws Ann. ch. 143, §§ 68, 69 (West 1958 & Cum.Supp. 1984–85). According to the testimony of OSHA's Supervising Safety Engineer for the Boston area, these regulations require interlocked gates on elevators and elevator landings. However, under chapter 288 of the 1962 Massachusetts Acts, elevators installed prior to the effective date of that Act that meet certain conditions are exempt from the provisions of the revised elevator and escalator regulations.[5] In 1980, chapter 288 was amended. Under the terms of the amendment, which takes effect for elevators like Beacon's on January 1, 1985, elevators must have interlocked doors on the elevator and on each landing to continue to qualify for the exemption from the remaining revised elevator and escalator regulations.[6] Thus, if as Beacon contends, its

---

**4.** Section 666(j) is set out in pertinent part in note 1, *supra*.

Despite the finding that the violation was a serious one, the ALJ assessed a penalty of only five dollars because he found that Beacon was a safety conscious company, it believed that it was in compliance with all applicable regulations, it was a small company that did not have access to the wealth of information available to larger companies, it decommissioned the elevator immediately after the accident, and it had not been advised by OSHA that federal policy differed from state policy.

**5.** 1962 Mass. Acts, Ch. 288 provides:

"Freight elevators installed prior to the effective date of this act in compliance with existing law shall, except as hereinafter provided, be exempt from the provisions of the revised elevator and escalator regulations (ELV–1 Revised) made by the board of elevator regulations in accordance with the provisions of section sixty-nine of chapter one hundred and forty-three of the General Laws, provided such freight elevators are (1) subject to annual inspection by the local building inspector or by an inspector of the division of inspection in the state department of public safety, (2) confined within the walls of a building, (3) housed in premises from which the public is excluded, (4) operated only by employees of the owner or lessee of such premises, (5) locked or protected by an alarm system when not in use, and (6) equipped with emergency stop switches in · accordance with

Division B–Part 6, Section 1, paragraph e (ELV–1 Revised.)

"The exemptions from said revised rules and regulations (ELV–1 Revised) provided herein shall continue only so long as the premises in which such freight elevators are located continue to be used for the same purposes for which they were used immediately prior to the effective date of this act."

**6.** 1980 Mass.Acts, Ch. 324, provides:

"SECTION 1. The first paragraph of chapter 288 of the acts of 1962 is hereby amended by striking out, in line 12, the word "and",—and by inserting after clause (6) the following two clauses:—(7) equipped with landing gates or doors on each floor, each gate or door having a minimum height of not less than five feet six inches with electrical mechanical interlocks; provided that each landing opening on an outside wall shall be equipped with a landing gate or door with a minimum height of six feet, and (8) equipped with car gates having a minimum height of not less than five feet six inches with electrical contacts.

.    .    .    .    .

"SECTION 3. The provisions of section one of this act shall take effect on January first, nineteen hundred and eighty-five; provided, however, that the provisions in said section one shall not apply to elevators with hatch covers until January first, nineteen hundred and eighty-seven."

elevator came within the chapter 288 exemption, as a matter of state law, it would not have been required to install interlocked car and landing doors until January 1, 1985. In the ALJ's view, however, compliance with amended chapter 288 was simply irrelevant to the question whether Beacon had violated the general duty clause because the Massachusetts statute is preempted by the Occupational Safety and Health Act.[7]

■ The Supreme Court has recently reiterated that there are, in general, two ways in which a state statute may be preempted.

If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent that it actually conflicts with federal law, that is when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Silkwood v. Kerr-McGee Corp.,* —— U.S. ——, ——, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citations omitted). In our view, the relationship between amended chapter 288 and the Occupational Safety and Health Act does not fall within either of these categories, and as a result, the Massachusetts statute is not preempted.

The express language of the Occupational Safety and Health Act clearly indicates that in the absence of an applicable standard Congress did not intend that OSHA "occupy an entire field of regulation," *Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* —— U.S. ——, 104 S.Ct.

2518, 2523, 81 L.Ed.2d 399 (1984), thereby ousting any state regulation. Section 18(a) of the Act, 29 U.S.C. § 667(a), provides that:

Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

Since no federal standard governs the conduct at issue in this case, it is clear that the Massachusetts statute is not preempted as a result of federal occupation of the field of elevator safety regulation.

Further, we do not believe that there is any actual conflict between federal and state law. Since the Massachusetts statute merely exempts certain elevators from complying with state regulations, there is no reason why an employer whose elevator falls within the state exemption should not comply with the requirements of federal law. We also fail to see how this exemption from state regulations could act as an obstacle to the accomplishment of the purposes of the federal statute. We must, therefore, conclude that amended chapter 288 is not preempted by the Occupational Safety and Health Act.

■ That the Massachusetts statute is valid and exempts certain elevators from state regulations, does not, of course, mean that these elevators are exempt from the requirements of federal law as well. There is nothing in either the language of Act or its history that indicates that Congress intended compliance with the minimum standards of applicable state law to create an exemption from the general duty clause.[8] Absent such evidence, the ines-

---

7. The ALJ never determined whether Beacon's elevator complied with the requirements of state law. Because of our disposition of this case, we also need not reach this question.

8. The only language in the Occupational Safety and Health Act that is even arguably relevant to this issue is found in 29 U.S.C. § 667(a). Although this section preserves state jurisdiction

in the absence of an applicable federal standard, there is no question that it was not intended to create an exemption from the general duty clause for compliance with minimum state standards. The language of the statute certainly does not compel such a result. Indeed, since the state remains free to apply its standards, it would strain the statutory language to regard enforcing a federal statute that has more strin-

capable conclusion is that Congress did not intend state law to create such an exemption, and as a result, we conclude that Beacon's conduct is governed by that clause.[9]

■ Beacon next contends that the Secretary of Labor abused his discretion by proceeding through adjudication under the general duty clause, rather than by establishing standards governing freight elevators under his rulemaking powers. It notes that the ALJ found that the installation of interlocks is an expensive and time consuming process. As a result, Beacon argues that it would have been fairer to proceed through the rulemaking process and to give Beacon time to install these devices before imposing a penalty for failure to do so. In addition, Beacon argues that as a matter of comity, the Secretary should not have interfered with the state regulatory process. We are, however, aware of nothing in the statute that prevents the Secretary from proceeding under the general duty clause in cases where abatement of a hazard may involve some expense. Nor are we aware of anything in the legislative history of the Act that indicates that Congress intended to create such a limitation. Additionally, we do not believe that the Act contains any requirement that the Secretary defer to state regulations. Indeed, our conclusion that the Secretary is not required to defer to applicable state regulations is essentially required by our holding that compliance with applicable state law does not create an exemption from the general duty clause. We therefore conclude that the Secretary did not abuse his discretion in proceeding under the general duty clause rather than through rulemaking.

Beacon's next argument is that the ALJ violated 28 U.S.C. § 2403(b) by failing to notify the Attorney General of Massachusetts that the constitutionality of one of that state's statutes had been challenged. Section 2403(b) provides in pertinent part:

In any action suit or proceeding in a court of the United States to which a State or an agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

Beacon maintains that the proceeding before the ALJ should be considered one that occurred "in a court of the United States" within the meaning of § 2403(b). As a result, Beacon argues that that statute was violated when the ALJ did not give notice to the Massachusetts Attorney General, and that we should reverse the judgment of the ALJ, or at a minimum remand to OSHA for further proceedings.

■ Even if we were to conclude that the administrative proceeding in this case could be characterized as one that occurred "in a court of the United States," neither a reversal nor a remand would be appropriate. First, we find it difficult to imagine a situation in which the proper remedy for a violation of § 2403(b) would be an outright reversal of the judgment below. Surely such a remedy would be inappropriate in this case, since we have determined that the ALJ's constitutional holding was not necessary to the judgment. Further, a re-

gent requirements than applicable state law as preventing the state from asserting jurisdiction. Moreover, we cannot imagine that Congress would have created such a major exception from the general duty clause without a single word in the legislative history indicating that this was its intent.

9. We do not, of course, intend to foreclose the possibility that compliance with a minimum state standard might be relevant to one of the

elements of a violation of the general duty clause. For example, Beacon contends that compliance with state law is, in the absence of actual knowledge that a condition is hazardous, relevant to whether a hazard is "recognized" within the meaning of the general duty clause. Because we conclude that the ALJ's finding of actual knowledge is supported by substantial evidence, *see infra*, pp. 17–18, we need not reach this contention.

mand is unnecessary since the constitutional issue in this case does not depend on any factual questions, but rather is purely a question of law. Thus, we may adequately address any concerns that the Massachusetts Attorney General may have without further development of the factual record.

Regardless of whether § 2403(b) was applicable to the administrative proceedings, there can be no question that it applies to this court. For that reason, and in order to remedy any defect that may have occurred below, we have directed the clerk of the court to certify to the Massachusetts Attorney General that the constitutionality of chapter 288 of the 1962 Massachusetts Acts, as amended by 1980 Mass.Acts, Ch. 324, has been drawn in question. Ordinarily, we might well withhold our decision until the Attorney General notified of us whether he wishes to intervene. In this case, however, we have upheld the constitutionality of the challenged Massachusetts act. In addition, the exemption from the requirement that elevators and landings have interlocked doors will expire, for elevators like Beacon's, in less than six months. As a result, we believe that it is highly unlikely that the Massachusetts Attorney General will wish to intervene in these proceedings. Consequently, we will not delay our decision until the Attorney General responds, but will permit the attorney general to file a petition for rehearing should he wish to intervene in these proceedings. *See Bridges v. Philips Petroleum Co.*, 733 F.2d 1153 (5th Cir.1984); *Thatcher v. Tennessee Gas Transmission Co.*, 180 F.2d 644, 648 n. 7 (5th Cir.), *cert. denied*, 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950).

Beacon's final two contentions are addressed to two of the findings of the ALJ. First, Beacon argues that the ALJ erred in finding that Beacon's elevator presented a "recognized hazard" within the meaning of the general duty clause.

■ One method by which the Secretary may discharge his burden of showing that a hazard is "recognized" is to demonstrate that the employer had actual knowledge that a condition was hazardous. *Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902, 910 (2d Cir.1977); *Brennan v. OSHRC*, 494 F.2d 460, 464 (8th Cir.1974). In this case the ALJ determined that Beacon had actual knowledge of the hazard presented by its elevator. We are bound by this determination if it is supported by substantial evidence. 29 U.S.C. § 660(a).

■ The ALJ based his conclusion that Beacon was aware of the hazards presented by its elevator on its safety program. There was, for example, testimony that Beacon's employees were told to be careful when they used the elevator, were instructed in the proper operation of the elevator, were told to keep their bodies outside of the elevator shaft when waiting for the elevator, and were told to call the elevator service company immediately if there were any problems with the safety of the elevator. It was unquestionably reasonable to infer from the presence of this safety program that Beacon was aware that its elevator was hazardous, and as a result, we conclude that the ALJ's finding that the elevator presented a "recognized" hazard is supported by substantial evidence.

Beacon contends that because the ALJ concluded that it is "a safety conscious employer," typescript op. at 10, he was bound to conclude that Beacon thought its safety program was equal to the hazards presented by its elevator. Therefore, in Beacon's view, the ALJ's use of the safety measures as evidence of "knowledge of greater, unguarded dangers" was erroneous. Brief for Petitioner at 34. The ALJ did not, however, utilize Beacon's safety program as evidence of dangers other than those that the safety program was designed to prevent. Rather, he utilized the safety program as evidence of the dangers that he inferred it was designed to prevent, and then separately evaluated whether the safety program was a sufficient preventative measure to meet the requirements of the general duty clause. Because the ALJ did not utilize the safety program as evidence of dangers other than those that he

reasonably believed it was designed to combat, we find no error in the ALJ's conclusion that Beacon had actual knowledge of the hazards presented by its elevator.

 Finally, Beacon argues that the ALJ erred in finding that the installation of interlocking car and elevator shaft gates is a feasible means of abating the hazards presented by its elevator. There is, however, ample evidence to support the feasibility and likely utility of these devices. OSHA's compliance officer testified that the hazard presented by Beacon's elevator could have been eliminated by installing interlocked car and hoistway doors. Further, OSHA's Supervising Safety Engineer for the Boston area testified that, since the 1920's, the American National Standards Institute has had a standard requiring the installation of these devices.[10] In addition, he testified that Massachusetts law requires these devices for nonexempt elevators, and that it was possible to install interlocked door and hoistway gates on elevators like Beacon's. Finally, he indicated that at least some owners of similar elevators had installed interlocked doors and gates.

Beacon argues, however, that even if this evidence is sufficient to establish the technological feasibility of these devices, there was no evidence of economic feasibility. However, as the Secretary argues, it is reasonable to infer from the longevity of the ANSI standard that interlocks had proved economically feasible. This conclusion is further supported by the evidence that other owners of similar elevators had converted their elevators. We therefore find no error in the ALJ's conclusion that interlocking elevator and landing gates are a feasible means to abate the hazards presented by Beacon's elevator.

*The order of the Occupational Safety and Health Review Commission is affirmed.*

In accordance with the foregoing opinion, it is hereby

*Ordered:* that the Clerk of this Court shall serve a copy of this opinion and Order on the Attorney General for the State of Massachusetts, and notify him that the constitutionality of chapter 288 of the 1962 Massachusetts Acts, as amended by 1980 Mass. Acts, ch. 324, has been drawn in question in this case.

---

**10.** The Secretary informs us that that the American National Standards Institute is "a national standards-setting organization which promulgates industry consensus safety standards." Brief of Respondent at 5.