Raymond J. DONOVAN, Secretary of
Labor, Petitioner,

v.

GENERAL MOTORS CORPORATION,
GM Parts Division, Respondent.

No. 84–1680.

United States Court of Appeals,
First Circuit.

Heard March 5, 1985.

Decided June 11, 1985.

Arthur J. Amchan, Washington, D.C., with whom Francis X. Lilly, Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Judith N. Macaluso, Asst. Counsel for Appellate Litigation, and Linton W. Hengerer, U.S. Dept. of Labor, Washington, D.C., were on brief for petitioner.

Alice M. Osburn, Detroit, Mich., with whom Edmond J. Dilworth, Jr. and Francis S. Jaworski, Detroit, Mich., were on brief for respondent.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge and RE,* Judge.

RE, Chief Judge:

Petitioner, the Secretary of Labor, pursuant to the provisions of the Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C. § 651 *et seq.*, petitions for review of a final order of the Occupational Safety and Health Review Commission (Commission) which held that the Secretary failed to prove that respondent, General Motors Corporation (GM), violated 29 C.F.R. § 1910.-132(a), the regulation that governs the use of "personal protective equipment."

The Secretary contends that the Commission's finding, that GM did not have actual or constructive knowledge of hazards in its facilities, is not supported by substantial evidence. GM, of course, supports the Commission's conclusion that a violation of the regulation was not established. GM, however, seeks to contest a prior decision

* Chief Judge, of the United States Court of International Trade, sitting by designation.

by the Commission in this action in which the Commission held that an occupational safety and health standard may not be challenged in an enforcement proceeding on the ground that its predecessor standard was improperly amended before the standard's adoption under the OSH Act. The Secretary argues in favor of the Commission's earlier holding.

Two questions are presented on this appeal: (1) whether the Commission erred in holding that the validity of a safety and health regulation may not be challenged in an Occupational Safety and Health Administration (OSHA) enforcement proceeding, on the ground that its ancestor standard was improperly amended; and (2) whether the Commission's finding, that the Secretary failed to establish that GM had actual or constructive knowledge of alleged hazards at its Westwood, Massachusetts and Chamblee, Georgia facilities, is supported by substantial evidence on the record considered as a whole.

Since we hold that the Commission correctly found that the Secretary did not establish GM's actual or constructive knowledge of a hazard, which required the use of personal protective equipment, we need not determine whether a safety and health regulation may be challenged in an OSHA enforcement proceeding, or whether the ancestor regulation to 29 C.F.R. 1910.-132(a) was improperly amended. Hence, we affirm.

### The Facts

At issue in this case are the safety procedures at GM's automotive parts warehouses in Westwood, Massachusetts (Westwood) and Chamblee, Georgia (Chamblee). At both facilities, the employees handle automotive or truck parts which weigh from a few ounces to over one hundred pounds. Parts that are too heavy to be moved by hand are moved by forklifts or other lifting devices.

At the Westwood facility, which employs between 150 to 168 persons, there were five injuries to the feet over a two and one-half year period prior to its inspection. At the Chamblee facility, which employs approximately 25 parts handlers or "checkers," there were twelve injuries to the feet over an eight year period prior to inspection.

GM does not require employees at either facility to wear steel-toed safety shoes. It does, however, require that substantial leather footwear be worn. In addition, it encourages employees to purchase and wear steel-toed safety shoes through a payroll deduction plan that enables employees to purchase the shoes at a substantial discount.

In response to an employee complaint, the Westwood facility was inspected by an OSHA compliance officer on the 24th of February, 1978. As a result of the inspection, and upon the recommendation of the inspecting officer, the Secretary of Labor, the statutory head of OSHA, cited GM with a "non-serious" violation of section 5(a)(2) of the OSH Act, 29 U.S.C. § 654(a)(2), and 29 C.F.R. § 1910.132(a), based on GM's failure to require its employees to wear steel-toed safety shoes.

On July 30, 1979, in response to an employee complaint, the Chamblee facility was inspected by an OSHA compliance officer. As a result, the Secretary cited GM with a "serious" violation [1] of 29 C.F.R. § 1910.132(a), for failing to require that its Chamblee employees wear steel-toed safety shoes.

### The Administrative Proceedings

GM contested the Secretary's allegations pertaining to its Westwood and Chamblee facilities, contending that the precursor of

---

1. A serious violation is defined as one where there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in [the] place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

29 U.S.C. § 666(k) (1982).

regulation 1910.132(a) was improperly amended. The Secretary, on the other hand, argued that section 6(f) of the OSH Act precluded a challenge to an ancestor standard in an enforcement proceeding, and that since GM had knowledge of the hazards existing in its facilities, it violated regulation 1910.132(a).

After a hearing on the Westwood citation, Administrative Law Judge (ALJ) Robert P. Weil granted GM's motion to dismiss the citation on the ground that the standard adopted by the Secretary in 29 C.F.R. § 1910.132(a) was improperly amended. On February 23, 1981, the Commission reversed the ALJ's decision, and remanded the case for further proceedings. On April 3, 1981, GM petitioned the Court of Appeals for the Sixth Circuit for review of the Commission's order. On the ground that the Commission's order was not a final order within the meaning of section 11(a) of the OSH Act, the Court of Appeals dismissed the petition. On remand, in a decision dated July 26, 1982, ALJ Foster Furcolo affirmed the citation.

On October 31, 1981, a hearing on the Chamblee citation was held before ALJ Jess D. Ewing. Upon reassignment of the case, ALJ Edwin Salyers affirmed the citation. In an opinion dated August 30, 1982, ALJ Salyers found that the Secretary had established that injuries to the feet, from falling automotive parts, constituted a hazard, and that GM had knowledge of the hazard.

On June 29, 1984, the Commission, upon consolidating the Westwood and Chamblee proceedings, reversed the ALJs' respective decisions, and vacated the citations on the ground that the Secretary had not established GM's actual or constructive knowledge that there existed hazards requiring the use of steel-toed safety shoes.

■ Regulation 1910.132(a) establishes a broad personal protective standard for industry generally. It provides that:

(a) *Application. Protective equipment, including personal protective equipment for* eyes, face, head, and *extremities,* protective clothing, respiratory de-

vices, and protective shields and barriers, *shall be provided, used and maintained* in a sanitary and reliable condition *wherever it is necessary by reason of hazards of processes or environment,* chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

29 C.F.R. § 1910.132(a) (Emphasis added). The Secretary may establish a violation of regulation 1910.132(a) by showing that an employer had either actual or constructive knowledge of a hazard in its facility which required the use of "personal protective equipment." *Cape & Vineyard Div. of the New Bedford Gas and Edison Light Co. v. OSHRC,* 512 F.2d 1148, 1152 (1st Cir.1975).

■ Since the question whether GM had actual or constructive knowledge of the alleged hazards is one of fact, the court will not disturb the Commission's finding if "supported by substantial evidence on the record considered as a whole...." 29 U.S.C. § 660(a). *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *American Petroleum Institute v. EPA,* 540 F.2d 1023, 1028–29 (10th Cir.1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977).

■ To establish that a hazard actually exists, it must be demonstrated that there is a *significant* level of risk. *Pratt & Whitney Aircraft v. Secretary of Labor,* 649 F.2d 96, 104 (2d Cir.1981). While all human endeavor entails some element of risk, the presence of this element of risk, in and of itself, does not suffice to establish that a hazard actually exists. Indeed, the Supreme Court has stated that:

[S]afe is not the equivalent of risk-free. There are many activities that we engage in every day—such as driving a car or even breathing city air—that entail some risk of accident or material health impairment; nevertheless, few people would consider these activities "unsafe." Sim-

ilarly, *a workplace can hardly be considered "unsafe" unless it threatens the workers with a significant risk of harm.*

*Industrial Union Dept. v. American Petroleum Inst.*, 448 U.S. 607, 642, 100 S.Ct. 2844, 2864, 65 L.Ed.2d 1010 (1980) (emphasis added).

In this case, the Secretary contends that, since there existed a "generic hazard" in GM's facilities, as indicated by the history of injuries to the feet of employees at both facilities, as well as the considerable weight of the automotive parts, GM had actual knowledge of the hazards at its facilities. The Secretary further contends that, since GM had encouraged its employees at both facilities to purchase and use steel-toed safety shoes, GM was aware of the hazards.

GM, on the other hand, contends that the Secretary failed to carry his burden of proof since he offered no evidence that steel-toed shoes would have prevented or significantly reduced the injuries which occurred at its facilities. GM also contends that, on the basis of *Cape & Vineyard Div. of the New Bedford Gas and Edison Light Co. v. OSHRC*, 512 F.2d 1148, 1154 (1st Cir.1975), GM's encouragement of its employees to purchase and use steel-toed safety shoes cannot be construed as actual knowledge of a hazard.

After reviewing the record, the Commission reversed both ALJ Furcolo's and ALJ Salyers' decisions by a 2–1 vote, and held that:

> [W]e are unconvinced that the number of injuries gave GM actual knowledge ... [and we are also] reluctant to attach much importance to the fact that GM encouraged employees to wear safety shoes.... Accordingly, we conclude that the Secretary failed to establish that GM had actual knowledge of a hazard requiring safety shoes.

### Actual or Constructive Knowledge of Hazards

■ An examination of the OSH Act reveals that, although its declared purpose is to assure "safe and healthful working conditions," 29 U.S.C. § 651(b), it does not establish as a *sine qua non* any specific number of accidents or injuries. *See Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir.1974). In addition, the mere fact that an automotive part may weigh in excess of one hundred pounds does not, in and of itself, render it dangerous. Hence, we find ample evidence in the record to support the Commission's conclusion that the Secretary did not establish a "generic hazard" based solely upon the inherent risk in handling heavy automotive parts, and the history of injuries at Westwood and Chamblee.

■ Furthermore, we cannot agree with the Secretary's contention that, by encouraging its employees to purchase and use steel-toed safety shoes, GM had actual knowledge of hazards existing in its facilities. Although a safety program, in some instances, may be considered as evidence of knowledge that a hazard exists, *see Puffer's Hardware, Inc. v. Donovan*, 742 F.2d 12, 18 (1st Cir.1984), a safety recommendation made by an employer to its employees does not establish that the precaution was necessary in order to comply with an OSHA regulation. *See United States Steel Corp.*, 82 OSAHRC 62/A2, 10 O.S.H.Cas. (BNA) 2123, 2131, 1982 O.S.H.Dec. (CCH) ¶ 26,297, p. 33,235 (1982). Indeed, this Court, in the *Cape & Vineyard* case, recognized that to establish such a rule "would needlessly discourage an employer from exhorting employees to take every possible safety precaution." *Id.* at 1154. *See also Cotter & Co. v. OSHRC*, 598 F.2d 911, 915 (5th Cir.1979); *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1338 (6th Cir. 1978).

■ Therefore, since our review of the record reveals substantial evidence to support the Commission's finding, that there did not exist a significant level of risk in either facility, we affirm the Commission's finding that the Secretary failed to establish that GM had actual knowledge of the

existence of hazards which required the use of steel-toed safety shoes.

The Secretary may also establish a violation of regulation 1910.132(a) if he can demonstrate that an employer has constructive knowledge of a hazard. This test is met by the Secretary showing that "a reasonably prudent man familiar with the circumstances of the industry would have protected against the hazard" in the manner asserted by the Secretary. *Cape & Vineyard, supra,* at 1152. Moreover, this Court recognized that in most instances "reference to industry custom and practice will establish the standard of conduct." *Id.; accord General Dynamics Corp. v. OSHRC,* 599 F.2d 453, 464 (1st Cir.1979).

Thus, in the absence of a showing of actual knowledge, or of a clear articulation by the Commission that industry custom and practice is not controlling, due process requires that the Secretary establish that a prudent person familiar with the automotive parts warehousing industry would have determined that steel-toed safety shoes were necessary in GM's facilities. *See Cape & Vineyard, supra,* at 1152; *S & H Riggers & Erectors, Inc. v. OSHRC,* 659 F.2d 1273, 1275 (5th Cir.1981).

The Secretary contends that, since he presented credible testimony that the practice of the "warehousing industry was to require the wearing of safety shoes," the Commission's finding, that GM lacked constructive knowledge of the hazards existing at its facilities, is not supported by substantial evidence. We disagree.

The record in this case reveals that although the Secretary presented witnesses familiar with the custom and practice of the general warehousing industry, they had little, if any, first-hand experience with the operation of an automotive parts warehouse. In fact, the only "expert" witness offered by the Secretary who had actually visited an automotive parts warehouse testified that his last visit was in 1952, more than twenty-five years before the inspections at Westwood and Chamblee. GM's witnesses, on the other hand, had substantial and recent experience in the automotive parts warehousing industry. Indeed, two of GM's witnesses testified without contradiction that the custom in the automotive parts warehouse industry is to encourage, but not require, the use of steel-toed safety shoes.

The record shows that the practice of the majority of persons most familiar with the automotive parts warehousing industry, that is, the employees themselves, was *not* to wear steel-toed safety shoes. For example, a GM employee who had worked at the Chamblee facility for twenty-three years testified that, although he was concerned that falling automotive parts presented a potential danger, he chose to continue to wear leather shoes despite the payroll deduction and discount plan.

The record also reveals a relatively low incidence of injury. For example, the one hundred and sixty-eight employees at Westwood handled from six to nearly sixteen million parts per year, yet the approximate injury rate was one injury for every million parts handled. Similarly, although the number of employees and parts handled at the Chamblee facility is considerably lower than at Westwood, the injury rate is not significantly different.

From our review of the record, we have concluded that the custom and practice of the automotive parts warehousing industry is to encourage, but not to require, the use of steel-toed safety shoes. We also find ample evidence in the record to support a finding that a reasonably prudent person, familiar with the automotive parts warehousing industry and the facts of this case, would not have determined that steel-toed safety shoes were necessary in GM's facilities.

Consequently, we conclude that there was substantial evidence in the record considered as a whole to support the Commission's finding that the Secretary failed to establish that GM had constructive knowledge of the existence of hazards in its facilities which required the use of steel-toed safety shoes.

### Conclusion

Since we hold that the Commission's factual findings, that the Secretary failed to establish GM's actual or constructive knowledge of the alleged hazards existing in its facilities, were supported by substantial evidence, the Commission's order of June 29, 1984 vacating the citations, is AFFIRMED.