UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1918

UNITED STATES OF AMERICA,

Petitioner, Appellee,

v.

STURM, RUGER & COMPANY, INC.,

Respondent, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge] 



Before

Selya, Stahl and Lynch,

Circuit Judges. 



Richard D. Wayne, with whom Willard Krasnow, Lara 
SanGiovanni, and Hinckley, Allen & Snyder were on brief, for 
appellant.
Frederick D. Braid, Walter J. Johnson, Sharon N. Berlin, 
Rains & Pogrebin, P.C., Daniel J. Popeo, and David A. Price on 
brief for Washington Legal Foundation, amicus curiae.
John Shortall, Attorney, United States Dep't of Labor, with 
whom Joseph M. Woodward and Ann Rosenthal, United States Dep't of 
Labor, Paul M. Gagnon, United States Attorney, and Gretchen Leah 
Witt, Assistant United States Attorney, were on brief, for 
appellees.



May 14, 1996



SELYA, Circuit Judge. On the surface this case appears SELYA, Circuit Judge. 

to touch a sensitive nerve: how the Occupational Safety and

Health Act (OSH Act), 29 U.S.C. 651-678 (1994), interfaces

with the field of ergonomics (the study and design of workplace

environments and job tasks and their effects on employee health).

Indeed, the respondent-appellant, Sturm, Ruger & Co. (Sturmco),

and the amicus, the Washington Legal Foundation (WLF),

deliberately frame the appeal in these terms; they entreat us to

declare that the Occupational Safety and Health Administration

(OSHA) lacks the authority to regulate ergonomics in the

workplace through the medium of the OSH Act's general duty

clause, id. 654(a)(1), and to reverse the district court's 

order on that basis. We turn a deaf ear to these blandishments

because close perscrutation of the record discloses that they are

premature. This is no more than a run-of-the-mine administrative

subpoena enforcement proceeding which presents no legitimate

opportunity to dwell on cosmic truths.

Deeming it unwise to make a long prologue and to be

short in the story itself, cf. 2 Maccabees 2:32, we omit any 

further introduction and proceed directly to the particulars.

I. BACKGROUND I. BACKGROUND

In August 1993 an OSHA representative arrived at

Sturmco's factory in Newport, New Hampshire, to look into an

employee complaint about air quality. But the visitor did more

than test for air contaminants; he also informed Sturmco of a

Local Emphasis Program (LEP) inaugurated by OSHA's area director.

2

The LEP identified certain New Hampshire employers, based on the

incidence of particular types of workers' compensation claims

filed with a state agency, whom the area director believed might

have an unusually high number of employees afflicted with

multiple movement disorders. The OSHA emissary reported that

Sturmco had been so identified and requested that it voluntarily

produce certain records detailing work-related injuries and

illnesses. Sturmco complied.

In November of the same year, the OSHA functionary

returned to videotape employees engaged in one of Sturmco's

manufacturing operations. He requested that the company complete

a questionnaire that related to ergonomic issues at the factory.

Sturmco took the matter under advisement and, in January,

informed OSHA that it would not answer the questionnaire.

OSHA then served a subpoena demanding that Sturmco

produce a myriad of documents concerning manufacturing processes,

employee training, and on-the-job injuries. The company fenced

with the agency, saying that it would comply with the subpoena

only in the event that OSHA agreed not to use any of the

resultant information to impose punitive sanctions. Refusing to

accede to this condition, OSHA invoked 29 U.S.C. 657(b) and

obtained enforcement of the subpoena in the federal district

court. See Reich v. Sturm, Ruger & Co., 903 F. Supp. 239 (D.N.H. 

1995). Sturmco appeals. We affirm.

II. SUBPOENA ENFORCEMENT II. SUBPOENA ENFORCEMENT

Although the parties especially the respondent and

3

the amicus expend a great deal of energy debating the merits of

ergonomic research and regulation, this exegesis is largely

beside the point. The principal question before this court is

much more mundane: did OSHA have the authority to issue the

administrative subpoena? We hold that it did.

A A

An administrative subpoena is not self-executing and is

therefore technically not a "search." It is at most a

constructive search, amounting to no more than a simple direction

to produce documents, subject to judicial review and enforcement.

See Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 195 (1946); 

In re Grand Jury Subpoena Served Upon Simon Horowitz, 482 F.2d 

72, 75-79 (2d Cir.), cert. denied, 414 U.S. 867 (1973). Thus, 

unlike the subject of an actual search, the subject of an

administrative subpoena has an opportunity to challenge the

subpoena before yielding the information. In the course of that

resistance, the Fourth Amendment is available to the challenger

as a defense against enforcement of the subpoena. See Donovan v. 

Lone Steer, Inc., 464 U.S. 408, 415 (1984); see generally Jack 

W. Campbell IV, Note, Revoking the "Fishing License," 49 Vand. L. 

Rev. 395, 408-09 (1996).

The requirements for enforcement of an administrative

subpoena are not onerous.1 In order to obtain judicial backing

 

1We note that the subpoena at issue here seeks only
corporate documents, and thus does not raise any of the concerns
discussed in In re Subpoena of Roger Gimbel, 77 F.3d 593, 596-600 
(2d Cir. 1996).

4

the agency must prove that (1) the subpoena is issued for a

congressionally authorized purpose, the information sought is (2)

relevant to the authorized purpose and (3) adequately described,

and (4) proper procedures have been employed in issuing the

subpoena. See United States v. Morton Salt Co., 338 U.S. 632, 

652 (1950); Oklahoma Press, 327 U.S. at 208; United States v. 

Comley, 890 F.2d 539, 541 (1st Cir. 1989). As long as the agency 

satisfies these modest requirements, the subpoena is per se

reasonable and Fourth Amendment concerns are deemed satisfied.

See Oklahoma Press, 327 U.S. at 208. These standards apply to 

OSHA subpoenas in exactly the same way that they apply to

subpoenas issued by other agencies. See, e.g., Reich v. 

Manganas, 70 F.3d 434, 437 (6th Cir. 1995); Reich v. National 

Eng'g & Contr'g Co., 13 F.3d 93, 98 (4th Cir. 1993); Dole v. 

Trinity Indus., Inc., 904 F.2d 867, 871 (3d Cir.), cert. denied, 

498 U.S. 998 (1990); Donovan v. Union Packing Co., 714 F.2d 838, 

840 (8th Cir. 1983).

B B

The respondent's central thesis boils down to this:

the subpoena should not be enforced because OSHA issued it

pursuant to an inspection scheme (the LEP) that did not derive

from within OSHA's statutory authority. Sturmco casts this

proposition in two modes. First, it focuses on the inspection

scheme in the forlorn hope that we will apply to this subpoena

the more stringent test applicable to administrative searches,

namely, the requirement that on-site inspections be conducted

5

pursuant to "reasonable legislative or administrative standards."

Marshall v. Barlow's, Inc., 436 U.S. 307, 320 (1978). 

We will not dance to the respondent's tune. At

present, OSHA is not seeking to conduct an inspection or any

other physical search of Sturmco's premises, but, rather, merely

to enforce a subpoena duces tecum.2 The Supreme Court has made

it pellucid that subpoenas as opposed to inspections or other

administrative searches are subject to the minimal standards of

Oklahoma Press and its progeny, not to the more rigorous Barlow's 

criteria. See Lone Steer, 464 U.S. at 414. Thus, to the extent 

that Sturmco's animadversions are directed at whether the LEP

drew its essence from a reasonable administrative standard, they

have no bearing on the question we must decide.

C C

In view of the frailty of its first asseveration,

Sturmco's appeal necessarily stands or falls on its second

argument, namely, whether issuing the subpoena was within OSHA's

statutory authority. We think that it falls.

1. The Statutory Scheme. The OSH Act imposes two 1. The Statutory Scheme. 

distinct duties on employers. First, employers must comply with

specific workplace health and safety standards established by

 

2It is simply not true, as Sturmco seems to suggest, that
OSHA may only issue subpoenas pursuant to inspections based on
employee complaints. As the Eighth Circuit has observed: "The
statute does not mandate an inspection of the premises in order
to enforce a limited subpoena to determine whether there is a
probable violation of the law. Indeed, the Secretary should not
be expected to do more than the circumstances require." Union 
Packing, 714 F.2d at 840 (citation omitted). 

6

OSHA. See 29 U.S.C. 654(a)(2). To this end, the Act grants 

OSHA authority to promulgate such standards.3 See id. 655. 

Second, to fill whatever gaps may exist after rules delineating

specific standards have been promulgated, the Act imposes on

employers a general duty to provide "employment and a place of

employment which are free from recognized hazards." Id.  

654(a)(1). OSHA enforces this general duty clause, as it is

called, through case-by-case adjudicative proceedings. See id.  

661(i) (establishing administrative adjudication mechanism);

Puffer's Hardware, Inc. v. Donovan, 742 F.2d 12, 17 (1st Cir. 

1984) (holding that the Secretary does not abuse his discretion

by issuing citations in adjudicative proceedings under the

general duty clause as opposed to establishing specific standards

via rulemaking); see also Reich v. Montana Sulpher & Chem. Co., 

32 F.3d 440, 445 (9th Cir. 1994) (noting "OSHA's statutory

obligation to enforce the general duty clause as a minimum

standard"), cert. denied, 115 S. Ct. 1355 (1995); Matter of 

Establishment Inspection of Kelly-Springfield Tire Co., 13 F.3d 

1160, 1167 (7th Cir. 1994) (acknowledging the Secretary's

authority to enforce the general duty clause); UAW v. General 

Dynamics Land Sys. Div., 815 F.2d 1570, 1577 (D.C. Cir.) (limning 

the standards OSHA must meet to prove a violation of the general
 

3Although OSHA has never established health and safety
standards relating specifically to ergonomics, the agency at one
point issued an advance proposed notice of rulemaking, requesting
information and comments on ergonomics from interested parties.
See 57 Fed. Reg. 34,192 (Aug. 3, 1992). OSHA has yet to 
promulgate an official notice of proposed rulemaking adumbrating
specific ergonomic standards.

7

duty clause), cert. denied, 484 U.S. 976 (1987). 

OSHA asserts as authority for the instant subpoena its

power to investigate possible violations of the general duty

clause. It is by now apodictic that enforcement of the general

duty clause is a purpose properly authorized by Congress. See, 

e.g., Montana Sulpher, 32 F.3d at 449; Kelly-Springfield, 13 F.3d 

at 1166-67.

2. "Recognized Hazards". In an effort to make an end 2. "Recognized Hazards". 

run around these holdings, Sturmco and WLF question the validity

of OSHA's purpose by positing that ergonomic hazards are not

"recognized hazards" within the purview of the general duty

clause. This initiative features two decisions in which

administrative law judges (ALJs) under the auspices of the

Occupational Safety and Health Review Commission (OSHRC) refused

to enforce citations for particular ergonomic hazards under the

general duty clause. See Beverly Enters., Inc., OSHRC No. 91- 

3344 (A.L.J. 1995); Pepperidge Farm, Inc., OSHRC No. 89-0265 

(A.L.J. 1993). Sturmco and WLF insist that these decisions show

that OSHA lacks the rudimentary authority to regulate ergonomics

under the general duty clause. In the absence of any more

specific regulatory authority, they conclude, OSHA cannot

demonstrate a proper purpose for the issuance of the instant

subpoena.

This conclusion is built on shifting sands. In the

first place, neither of the cited ALJ decisions holds that OSHA

lacks authority in all instances to regulate ergonomics under the 

8

general duty clause.4 They therefore fail to provide convincing

support for the proposition that OSHA will not be able to prove a

violation of the general duty clause in this case. In the second

place and more important the respondent's argument

misconstrues the scope of the judicial inquiry that is

appropriate at this stage.

We have repeatedly admonished that questions concerning

the scope of an agency's substantive authority to regulate are

not to be resolved in subpoena enforcement proceedings. See FTC 

v. Monahan, 832 F.2d 688, 690 (1st Cir. 1987), cert. denied, 485 

U.S. 987 (1988); FTC v. Swanson, 560 F.2d 1, 2 (1st Cir. 1977) 

(per curiam); SEC v. Howatt, 525 F.2d 226, 229-30 (1st Cir. 

1975). Subpoena enforcement proceedings are designed to be

summary in nature, see Comley, 890 F.2d at 541, and an "agency's 

investigations should not be bogged down by premature challenges

to its regulatory jurisdiction," Swanson, 560 F.2d at 2. As long 

as the agency's assertion of authority is not obviously

apocryphal, a procedurally sound subpoena must be enforced. See 

id.; see also EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 923 

(11th Cir. 1991).

Refined to bare essence, the respondent's argument runs

 

4Both decisions are presently on review before OSHRC. In
any event, because the cases are merely first-tier ALJ decisions,
they are entitled to no precedential value before this tribunal.
See Matter of Establishment Inspection of Cerro Copper Prods. 
Co., 752 F.2d 280, 284 (7th Cir. 1985) (per curiam) ("An 
unreviewed ALJ decision does not bind OSHRC or the courts as
precedent.") (citing cases). Their utility depends solely on
the persuasive power, if any, of their reasoning.

9

along the following lines. As part of its burden of proving a

violation of the general duty clause, OSHA must show that an

employer failed to keep its workplace free of a recognized hazard

that caused (or was likely to cause) death or serious physical

injury. See General Dynamics, 815 F.2d at 1577; Puffer's 

Hardware, 742 F.2d at 18. Ergonomic hazards, Sturmco argues, are 

not such "recognized hazards," and, therefore, OSHA cannot carry

its burden. Given the early stage of the proceedings, this

argument falters.

To be sure, a debate rages in both legal and medical

circles over the dangers posed by, for example, multiple movement

disorders, as well as over the optimum method(s) by which so-

called ergonomic dangers can be alleviated. But uncertainties of

this sort do not provide a cognizable basis for concluding at 

this stage that OSHA would not be able to issue a citation. This 

is especially true when, as now, a subpoena is "designed to

produce the very information that may be needed to shed light

upon those questions." Howatt, 525 F.2d at 230. 

3. A Variation on the Theme. WLF comes at the problem 3. A Variation on the Theme. 

from another angle. It asserts that once a subpoena is enforced

the chance for an effective challenge evaporates because most

employers are likely to settle with OSHA rather than proceed

through the rigors of the administrative litigation process. As

an initial matter, we doubt that this argument is properly before

us. While amicus briefs are helpful in assessing litigants'

positions, an amicus cannot introduce a new argument into a case.

10

See Lane v. First Nat'l Bank, 871 F.2d 166, 175 (1st Cir. 1989) 

(explaining that an amicus may not "interject into a case issues

which the litigants, whatever their reasons might be, have chosen

to ignore"); accord Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 36 

(1st Cir. 1993).

In all events, WLF's argument fails on the merits. It

offers no empirical or statistical evidence in support of its

conclusions about settlement rates. Moreover, it points to no

case holding that the prospective burden of litigation

constitutes a cognizable injury sufficient to breathe life into a

pre-enforcement challenge to agency action notwithstanding the

guaranteed availability of judicial review following final agency

action. Put bluntly, WLF asks us to buy a pig in a poke, and we

refuse to do so.

At any rate, we have already rejected a similar

argument in repudiating an estoppel-based collateral attack on an

OSHA citation. In Northeast Erectors Ass'n v. Secretary of 

Labor, 62 F.3d 37 (1st Cir. 1995), we held that a party did not 

suffer substantial harm from being required to raise defenses to

a citation only after the citation had issued. See id. at 40. 

We also warned that permitting parties to circumvent the

administrative process by bringing collateral challenges in the

district court would "subvert Congress's intent to have such

claims reviewed through the OSH Act's detailed administrative

procedure." Id. 

4. Recapitulation. We need go no further. OSHA's 4. Recapitulation. 

11

authority to investigate ergonomic conditions in search of

possible general duty clause violations easily passes the

undemanding test for the enforceability of administrative

subpoenas. Were we to succumb to the siren song that Sturmco

sings and stop the subpoena for want of some sophisticated

standard for systemically specifying ergonomic hazards, we would

in effect be requiring OSHA to "charge first and investigate

later." Montana Sulpher, 32 F.3d at 444. This tergiversation 

would stand the administrative enforcement process on its head

and in the bargain would both defy the will of Congress and

ignore the teachings of the Court. We will not encourage so

resupinate an exercise.

D D

We must attend to a final detail. While the respondent

does not seriously contend that the documents requested in the

subpoena are irrelevant to OSHA's asserted purpose or that the

subpoena was issued in a procedurally irregular manner, it does

attempt to argue that enforcement should be withheld because the

subpoena is abusive and overbroad. On appeal, Sturmco's sole

stated basis for this contention is that, because there is no

ergonomic standard or definition of ergonomic hazard, any

document request must necessarily be abusive. This is nothing

more than a cross-dressing of the argument, previously rejected,

that OSHA lacks authority to issue a subpoena pursuant to an

investigation of ergonomic hazards for possible violations of the

general duty clause. We can conceive of no reason to give this

12

importuning further attention. Accordingly, the subpoena must be

enforced.

III. CITATION ENFORCEMENT III. CITATION ENFORCEMENT

In July of 1994, while the respondent was in the midst

of contesting the subpoena's validity, OSHA issued a citation

charging the company with failure to produce certain subpoenaed

documents. The respondent requested that the district court

prohibit enforcement of the citation. The court refused, citing

a perceived lack of jurisdiction. See Sturm, Ruger, 903 F. Supp 

at 250.

As the district court recognized, id. at 249-50, it is 

questionable whether OSHA citations issued for failure to comply

with a subpoena that the employer is in the process of

challenging may be enforced. See, e.g., Lone Steer, 464 U.S. at 

415 (explaining that an employer may "question the reasonableness

of [a] subpoena, before suffering any penalties for refusing to 

comply with it, by raising objections in an action in the 

district court") (emphasis supplied); See v. City of Seattle, 387 

U.S. 541, 544-45 (1967) (similar); Brock v. Emerson Elec. Co., 

834 F.2d 994, 997 (11th Cir. 1987) (similar). But as the

district court also recognized, Sturm, Ruger, 903 F. Supp. at 

250, the law lodges exclusive jurisdiction over challenges to the

validity of citations with OSHRC, subject to review by the court

of appeals. See 29 U.S.C. 659(c) & 660(a); see also Northeast 

Erectors, 62 F.3d at 39-40 (explaining jurisdictional structure 

of OSH Act and holding that the district court lacked subject

13

matter jurisdiction over a pre-enforcement challenge to an OSHA

citation).

The OSH Act provides only a few limited bases for

original jurisdiction in the district court, and none of those

bases exists here. The administrative review and appeals process

thus remains "the exclusive procedure through which an employer

can obtain review of OSHA [citation] enforcement proceedings."

Northeast Erectors, 62 F.3d at 39.5 Consequently, the district 

court did not err in refusing, on jurisdictional grounds, to

entertain Sturmco's complaint anent the citation.

IV. CONCLUSION IV. CONCLUSION

There is much less to this appeal than meets the eye.

Because OSHA had authority to issue the subpoena to investigate

possible violations of the general duty clause, we must affirm

the judgment below. In so doing, we leave for another day the

question whether OSHA will ultimately be able to enforce a

citation against Sturmco (or anybody else, for that matter) on

the ground that ergonomic hazards are recognized hazards within

the meaning of the OSH Act's general duty clause.

Affirmed. Affirmed. 

 

5Sturmco is currently contesting the citation before OSHRC,
and it will be entitled to all appropriate defenses against
enforcement there and on any ensuing appeal. See, e.g., Emerson 
Elec., 834 F.2d at 997 (affirming OSHRC's vacation of citation 
issued for failure to produce documents). That route is the only
available avenue of protest vis-a-vis the citation.

14