State v. Chapparral Steel Co















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-013-CV

     THE STATE OF TEXAS,
                                                                              Appellant
     v.

     CHAPARRAL STEEL COMPANY,
                                                                              Appellee
 
 
From the 40th District Court
Ellis County, Texas
Trial Court # 50334
                                                                                                                 

O P I N I O N
                                                                                                                 

     We must decide whether the Railroad Clearance Act (the Act) applies to tracks owned by a
non-railroad company, and if so, whether the applicable provisions of the Act have been preempted
by the Federal Occupational Safety and Health Act. Because we find that the Act applies and has
not been preempted, we will reverse the summary judgment and remand the cause for a
determination of the amount of penalties due to the State.
FACTS
      The Attorney General, at the request of the Texas Railroad Commission (the State), sued
Chaparral Steel Company (Chaparral) for civil penalties after a company employee was crushed to
death between a train and a retaining wall at the company’s plant site. The State charged violation
of the Texas Railroad Clearance Act (the Act). Tex. Rev. Civ. Stat. Ann. art. 6559a (Vernon
1925). Chaparral denied that the Act applied, because it is a private corporation engaged in
manufacturing and recycling steel. All materials going in and out of the steel plant are moved by
rail, including raw materials, scrap, and finished products. Chaparral owns and maintains its own
private system of railroad tracks, switches, spurs, and rail cars (all on its plant site) to conduct its
steel business.
      After the fatal accident, the Occupational Safety and Health Administration (OSHA) cited
Chaparral for a safety hazard for maintaining a dangerous situation created by having inadequate
clearance around the rail tracks. To settle this citation, Chaparral paid a $5,000 penalty and agreed
to: (l) implement an “absolute work rule” prohibiting employees from working in that area when
boxcars were present; (2) conduct safety training concerning the hazards; and (3) install warning
signs identifying the danger and telling employees to avoid the area when the track had cars on it. 
Because of this action, Chaparral claims federal law has preempted the State in regulating this
particular safety hazard and therefore the Act does not apply.
      Both the State and Chaparral moved for summary judgment. Chaparral’s motion was based
on two separate grounds, and the trial court granted it without specifying on which ground (or both)
it was granted. The State thus attacks both grounds on appeal. We will consider them in the order
of the State’s contentions, first that the Texas Railroad Clearance Act of 1925 applies even though
Chaparral is not a “railroad,” and second that the federal government, via OSHA regulations, has
not preempted state authority in this area. The record on appeal is complete because findings of
fact and conclusions of law have no place in a summary judgment proceeding. Linwood v. NCNB,
885 S.W.2d 102, 103 (Tex. 1994).
STATUTE
      The Act was passed in 1925. In summary, section 1 requires 22 feet of vertical clearance from
the top of the rails; section 2 requires 8 ½ feet of clearance from the center of the rail line; section
3 applies these clearances to projections as well as structures, with section 3a “grandfathering”
certain existing or under-construction nonconforming structures; section 4 authorizes penalties;
section 5 allows the Railroad Commission to grant deviation permits in certain cases; and section
6 contains procedural enactment details.
      The plain and common meaning of the words as used is the standard with which this Court
must review statutory language. Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 352 (Tex. 1990). 
Furthermore, statutory construction should evaluate the entire document rather than focus on
separate sections. Durish v. Channelview Bank, 908 S.W.2d 273, 275 (Tex. App.—Austin 1991,
writ denied). When a court is interpreting the language in a statute, the words and terms the
legislature used must be considered in their plain and common meanings. Monsanto Co. v.
Cornerstones Mun.Util.Dist., 865 S.W.2d 937, 939 (Tex. 1993).
      Chaparral’s particular challenge to coverage focuses on comparing the wording found in
Sections 1 and 2 regarding who is doing the building. Section 1 refers to a long list of constructed
items “built over the tracks of a railway, or over the tracks of railroads, by the State, or by a
county, municipality, a railroad company or other corporation, firm, partnership, or natural
person. . . .” Tex. Rev. Civ. Stat. Ann. art. 6559a (Vernon 1925) (emphasis added). 
Chaparral does not contest that section 1 of the Railroad Clearance Act applies to it; rather it argues
that because the language in section 2 does not follow the identical language in section 1, the
Legislature must have intended that a different group of entities be covered. 
      Section 2 reads:
All loading platforms and all houses and structures, and all fences, and all lumber, wood and
other materials hereafter built, placed or stored along the railroads of this State, either on or
near the right of way of the main lines, or on or near any spur, switch or siding of any such
railroad shall be so built, constructed, or placed that there shall be not less than eight and one-half (8 ½) feet space from the center of such main line, spur, switch, or siding to the nearest
edge of the platform, or to the wall of the building, or to the lumber, wood, or other material.
 
Id., art. 6559b (Vernon 1925) (emphasis added). Because the retaining wall is the type of structure
covered under section 2 of the statute, Chaparral argues that this is the controlling section, and that
for the Act to apply at all, the company would have to be a “railroad of this state” as the phrase
is used in section 2.
      It then argues that it is not “a railroad of this state” because that phrase in this context means
a common carrier. We disagree. We find no authority for such a narrow definition of “railroad.” 
Early cases decided before the enactment of the Railroad Clearance Act held precisely the opposite. 
E.g., Kirby Lumber Co. Receivers v. Owens, 120 S.W. 936 (Tex. Civ. App. 1909) and
Consolidated Kansas City Smelting & Ref. Co. v. Schulte, 176 S.W. 94 (Tex. Civ. App.— El Paso
1915, writ ref’d). We agree with the State that the plain meaning of this phrase refers to the
physical location of the rails, i.e., they are in Texas. “Railroad of this state” refers to physical
facilities, not to ownership. Section 1 plainly includes Chaparral as an entity which must provide
proper clearances for tracks located within the State of Texas, with section 1 describing the types
of obstructions in vertical relation to the track and section 2 describing them in horizontal relation
to the track.
      We believe the plain meaning of the statute is that all railroad tracks in the State must be kept
free of obstructions. The legislature in 1925 decided that the standard open area around the tracks
would be 8 ½ feet horizontally from the center of the track and 22 feet vertically from the top of
the rails. The plain meaning allows for no other interpretation. The State’s first point of error is
sustained.
FEDERAL PREEMPTION
      The State’s second point of error attacks the defense that the federal government has preempted
regulations in this area by the Occupational Safety and Health Act. 29 U.S.C.A. § 651 (1970). The
Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, establishes the
principle that when state and federal law conflict, federal law will prevail unless the regulated area
is clearly within a state’s reserved power. Felder v. Casey, 487 U.S. 131, 138, 108 S. Ct. 2302,
2307, 101 L.Ed. 2d 123, 130 (1988). A court interpreting a federal statute pertaining to an area
of state authority should assume that the historic police powers of the States are not superseded by
the federal act unless that was the clear and manifest purpose of Congress. Rice v. Santa Fe
Elevator Corp., 33l U.S. 218, 230, 67 S.Ct.1146, 1152, 91 L.Ed. 1447, 1452 (1947). Chaparral
claims that the citation it received from OSHA inspectors for a retaining wall having been built 
too close to its tracks shows that Congress has preempted this State regulation. This citation,
however, was issued under the “general duty to maintain a safe workplace” provision of the OSHA
act, and there is no other federal provision cited which governs clearances around railroad tracks.
      Chaparral relies on a recent decision by the United State Supreme Court, Gade v. National
Solid Waste Mgmt. Ass’n., 505 U.S. 88, 112 S.Ct. 1274, 120 L.Ed.2d 73 (1992), as authority for
the proposition that federal law should be held to have preempted the Texas Act. Gade is a five-to-four decision with one of the majority justices filing a separate opinion concurring in part of the
opinion. It recognizes that preemption may be either explicitly or implicitly contained in a statute’s
structure. Id., 505 U.S. at 98, 112 S.Ct. at 1283. This case dealt with a very specific area— the
training, testing, and licensing of hazardous waste disposal employees—which had already been
regulated by federal law. Furthermore, the state plan was extensive, thoroughly developed, and
subjected employers and employees to an additional set of standards. This overlapping of authority
in the specific area is very different than the issue now before this court with the Texas Act. There
is no parallel federal regulation specifying railroad clearances. The OSHA “general duty” clause
is just that: a very broad, nonspecific statement that employers in general have an obligation to
provide a safe environment for their employees. It has been specifically recognized that the general
duty clause does not conflict with state standards. Puffer’s Hardware, Inc. v. Donavan, 742 F.2d
12, 16 (1st Cir. 1984). Indeed, it would not make sense for the general duty clause to supersede
all specific standards enacted by state authorities to encourage the kind of workplace that OSHA
regulations were attempting to ensure.
      Preemption, furthermore, occurs only to the extent that a state law interferes with or is
contrary to a federal law, and even then the state statute is void only to the extent that it actually
conflicts with the federal law. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132,
142-144, 83 S.Ct. 1210, 1217-19, 10 L.Ed.2d 248, 254-55 (1963). Applying this principle to
Chaparral, if Chaparral had complied with the Act, the hazardous condition would not have existed
to trigger a citation for violating the general duty an employer has to maintain a safe working
environment.
      Chaparral also argues that Section 1910.145(c)(3), C.F.R., regulates the hazardous track
situation to the exclusion of the Texas Act because that section was also referred to in the citation. 
Entitled “Specifications for accident prevention signs and tags,” its aim is to standardize color and
design for safety signs. In addition, the next to last sentence of subsection (a) Scope reads:
These specifications are intended to cover all safety signs except those designed for streets,
highways, railroads, and marine regulations.
 
We hold that neither this section concerning signs for hazardous situations nor the general duty
clause of the OSHA act preempts the Texas Act. The State’s second point of error, that the trial
court erred in granting summary judgment on the basis that the clearance law is preempted by the
OSHA act, is sustained.
      At oral argument, the parties agreed that in the event of a reversal the cause should be
remanded for a determination of the amount of penalties to which the State may be entitled under
the Act. Accordingly, we remand the cause to the trial court for further proceedings consistent
with this opinion.
 
                                                                               BILL VANCE
                                                                               Justice
 
Before Chief Justice Davis,
      Justice Cummings, and
      Justice Vance
Reversed and remanded
Opinion delivered and filed July 9, 1997
Do not publish