**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Appellee,**

v.

**UNION PACKING COMPANY OF OMAHA, Appellant.**

No. 82–2548.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1983.

Decided Aug. 18, 1983.

T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Dennis K. Kade, Counsel for Appellate Lit., Tedrick A. Housh, Regional Sol., Shelley D. Hayes, Atty., U.S. Dept. of Labor, Washington, D.C., for appellee.

Martin A. Cannon, Matthews, Cannon & Riedmann, P.C., Omaha, Neb., for appellant.

Before HEANEY, Circuit Judge, and FLOYD R. GIBSON and ROSENN,* Senior Circuit Judges.

HEANEY, Circuit Judge.

Union Packing Company appeals from a district court order enforcing an administrative subpoena duces tecum issued by the Secretary of Labor. The Secretary sought to obtain company records concerning the number of worker illnesses and injuries to determine if the company's premises would be inspected for compliance with the Occupational Safety & Health Act (OSHA). We hold that the Secretary's use of the subpoena power for this purpose is authorized by OSHA, and that the statute as thus construed is constitutional. We therefore affirm the district court's enforcement order.

Union Packing Company operates a meat packing plant in Omaha, Nebraska. Following the Secretary's procedures for "programmed inspections," an OSHA compliance officer went to the company's premises to review certain selected records to determine from those records the company's lost workday injury rate. When the company refused to permit the officer on its premises, the Secretary issued a subpoena duces tecum, which required the company to produce a number of OSHA forms relating to occupational illnesses and injuries in its workforce,[1] along with workmen's compensation reports and records on the number of employees and number of hours worked. The company failed to respond, and the Secretary sought enforcement of the subpoena in district court. The court ordered the subpoena enforced, but stayed its enforcement pending this appeal.

On appeal, the company raises two major issues concerning the validity of the district court's enforcement order: (1) whether OSHA authorizes the Secretary to use the subpoena power absent a full-scale investigation, and (2) if so, whether such use is permissible under the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

We have little difficulty with the first issue. Section 657(c) of OSHA requires employers to "make, keep and preserve, and make available" such records as the Secretary "may prescribe by regulation as necessary or appropriate for the enforcement of [OSHA]." 29 U.S.C. § 657(c)(1). This section also requires employers to maintain accurate records of and to make periodic reports on "work-related deaths, injuries and illnesses." *Id.* § 657(c)(2). Consistent with the statute, the Secretary has issued regulations which detail the specific records that must be maintained. *See* 29 C.F.R. §§ 1904.2, 1904.4, 1904.6 (1982) (OSHA Forms 100, 101, and 200). *See generally id.* §§ 1904.1–1904.22.

The company argues that the Secretary may subpoena such records only during an investigation of its premises. It calls attention to the language of section 657(b) of the Act, which states: "In making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath." 29 U.S.C. § 657(b). While the argument that this language indicates that the Secretary may only require the production of evidence during an inspection authorized by a warrant has surface appeal, it must be rejected.

The Secretary's authority to conduct "inspections and investigations under this chapter" is not limited to comprehensive inspections or investigations. *See Marshall v. Olean Title Co.,* 489 F.Supp. 32, 34–35 & n. 2 (E.D.Pa.), *aff'd mem.,* 636 F.2d 1209 (3d Cir.1980). *See also General Motors Corp. v. Director of NIOSH,* 636 F.2d 163, 165 (6th Cir.1980), *cert. denied,* 454 U.S. 877, 102

---

* The Honorable MAX ROSENN, United States Senior Circuit Judge, Third Circuit, sitting by designation.

1. The subpoena specifically requested OSHA Forms 100, 101, and 200. OSHA Form 100 is a predecessor of OSHA Form 200, which is a log and summary of all recordable occupational injuries and illnesses in the workplace. 29 C.F.R. §§ 1904.2, 1904.6 (1982). OSHA Form 101 is a supplemental record of the occupational injuries or illnesses, which can be a workmen's compensation report or other acceptable alternative. *See* 29 C.F.R. § 1904.4 (1982).

S.Ct. 357, 70 L.Ed.2d 187 (1981); *E.I. du Pont de Nemours & Co. v. Finklea,* 442 F.Supp. 821, 824 (S.D.W.Va.1977). The statute does not mandate an inspection of the premises in order to enforce a limited subpoena to determine whether there is a probable violation of the law. *See United States v. Morton Salt Co.,* 338 U.S. 632, 652–653, 70 S.Ct. 357, 368–369, 94 L.Ed. 401 (1950). Indeed, the Secretary should not be expected to do more than the circumstances require.

The same is true of the regulations cited by the company. These regulations discuss the use of the subpoena power during inspections, but they do not limit the Secretary's power exclusively to situations in which there is an ongoing comprehensive inspection. *See* 29 C.F.R. §§ 1903.3 & 1903.4 (1982).

The company also contends that case law, particularly *In re Establishment Inspection of Kulp Foundry, Inc.,* 691 F.2d 1125, 1132 (3d Cir.1982), establishes that the Secretary's subpoena power is adjunct to his power to conduct investigations with a warrant. We find the *Kulp* case inapposite. In *Kulp,* the Third Circuit held that even if the Secretary had obtained a warrant to inspect a company's premises, a broad request for documents could not be enforced without a subpoena, because "Congress intended the safeguards of a subpoena requirement to apply to the production of documents." *Id.*

The *Kulp* Court did not decide the issue presented in this case, and specifically declined to decide "whether or not a subpoena is necessary to reach records that an employer is required to 'make available' under * * * the Act." *Id.* at n. 18. It noted that the validity of an administrative subpoena in all contexts is judged by examining three factors: (1) whether the inquiry is within the authority of the agency; (2) whether the demand is sufficiently definite; and (3) whether the information sought appears to be reasonably relevant to the authorized inquiry. *Id.* All three factors are satisfied here.

A case closer to the present one is *Donovan v. Wollaston Alloys, Inc.,* 695 F.2d 1, 8 (1st Cir.1983). In *Wollaston Alloys,* the First Circuit held that the Secretary may review forms required under OSHA section 657(c) through either a subpoena or a warrant. The *Donovan* Court noted the specific language of section 657(c), which requires employers to "make, keep, and * * * make available" records which the Secretary prescribes, and stated that it was "reasonable to assume that an employer would have less of a privacy interest in a document it is required by statute or regulation to maintain than in a document it produces and maintains on its own." *Id.* (Citation omitted).

■ We thus agree with the Secretary that the statute authorizes the use of the subpoena power, independent of an inspection of the premises, to obtain records the company is required to maintain under section 657(c) as well as other standard records which are necessary to compute the lost workday injury rate. Moreover, we believe that the company's position to the contrary is inconsistent with the purposes of the statute to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Adoption of the position advanced by the company would severely limit the Secretary's power to enforce the Act. In every instance, the Secretary would be required to find specific evidence of an existing violation before conducting even a limited review of the records a company is obligated to keep and make available under the statute. We cannot agree that the language of the statute compels this result.

The more difficult issue is whether the Secretary's exercise of the subpoena power conferred by the statute as construed is permissible under the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The company argues that even if the statute allows a subpoena to be used to inspect or review documents in circumstances where a warrant for a general investigation has not been obtained, the Constitution lim-

its the statute in this manner. We disagree.

In *Marshall v. Barlow's, Inc., supra,* the Supreme Court held that the Secretary must obtain a warrant in order to inspect a workplace under section 657(a) of OSHA, which authorizes the Secretary to "inspect and investigate" places of employment to ensure compliance with the statute. 29 U.S.C. § 657(a). The Court indicated that such a warrant may be obtained either by presenting specific evidence of an existing violation of the Act at the workplace in question, or by showing that the workplace was selected in accordance with a general plan having neutral criteria. *Id.* at 320–321, 98 S.Ct. at 1824.

The Court was concerned that a warrant was necessary to protect against the use of "unbridled discretion" concerning "when to search and whom to search." *Id.* at 323, 98 S.Ct. at 1825. The Court noted that "[d]elineating the scope of a search with some care is particularly important where documents are involved," *id.* at 324 n. 22, 98 S.Ct. at 1826 n. 22, rejecting the Secretary's position that "records required by the Act and * * * other records which are directly related to the purpose of the inspection," and any "additional records" as an OSHA inspector requests may be inspected without a warrant. *Id.*

The Secretary's use of the subpoena power was not at issue in *Barlow's,* but the company would have us interpret the case to prohibit the Secretary from obtaining *any* documents by subpoena without a warrant. We reject this interpretation of *Barlow's.* Indeed, were the company's position accepted, it would ultimately negate one of the bases that the Supreme Court stated could be used to obtain a warrant to inspect a company's premises, *i.e.,* an inspection pursuant to a general plan with neutral criteria. Without preliminary information such as a company's lost workday injury and illness rate, it would be difficult for the Secretary to develop a plan with neutral criteria which could be used to select a workplace for inspection.

The company in this case was asked to provide a very limited number of documents in accordance with the Secretary's general plan for "programmed inspections." A workplace is selected for a programmed inspection if it is a member of a high hazard industry and its lost workday injury rate exceeds a certain average rate.[2] Union Packing Company appeared on the Secretary's "high hazard general industry-safety" list for the State of Nebraska, because it is a member of the meat packing industry, which has a lost workday injury rate in excess of the national average for all industries. The Secretary thus sought access to the company's records to determine if its lost workday injury rate was higher than the average for similar industries, which would subject the company to a programmed inspection.[3] Because Union

2. The workplace must also employ more than ten workers and must not have been inspected within the past fiscal year. *See* OSHA Instruction CPL 2.25B CH–1, Office of Compliance Programming, 7–8 (Addendum A).

3. At oral argument, there was extended discussion concerning what figure the company's lost workday injury rate would be compared to in order to determine if an inspection should take place. An affidavit of an OSHA official and OSHA Instruction CPL 2.25B CH–1 indicated that the Secretary compares the injury rate of individual companies within a high hazard industry to the average for all manufacturing industries. *See* Affidavit of Gary Noss, ¶ 8 (September 28, 1982); OSHA Instruction CPL 2.25B CH–1, *supra,* at 14 & Appendix D at D–7, D–10, D–11. Counsel for the Secretary indicated at oral argument, however, that the com-

parison was between an individual facility's injury rate and the average rate for industries in the same Standard Industrial Classification Code. We need not decide which comparison is made at this time; the company is free to challenge the comparisons made if a warrant is issued.

In addition, after oral argument, this Court requested that counsel for the government provide the Court with the list of high hazard industries, by Standard Industrial Classification Code, for the State of Nebraska. The government furnished this document to the Court for in camera inspection, a procedure which the company objects to. The Court did not consider or rely upon this document in reaching its decision, however, and accordingly need not address the company's argument that it should be provided a copy.

Packing Company's records were sought based on the neutral criteria that the company was a member of a high hazard industry, the evils the Supreme Court sought to guard against in *Barlow's* are simply not present.

Moreover, the request for documents from Union Packing is much narrower than that involved in *Barlow's.* In *Barlow's,* not only did the Secretary seek a complete inspection of the premises, he also sought inspection of " 'all other things therein (including but not limited to records, files, papers, processes, controls and facilities) bearing upon whether [the company] is furnishing to its employees employment and a place of employment that are free from recognized hazards * * * and whether [the company] is complying with . . .' the OSHA regulations." *Id.* In contrast, the Secretary has requested from Union Packing Company only those records necessary to calculate its lost workday injury rate. This minimal intrusion does not circumvent the warrant requirement established in *Barlow's,* but rather is a part of the process for ensuring that "reasonable * * * administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Id.* at 320, 98 S.Ct. at 1824 (quoting *Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)). A warrant which meets the criteria established in *Barlow's* is still required prior to an inspection of the company's premises.

Under these circumstances, we believe that the Secretary's use of the subpoena power is constitutionally permissible. Disclosure of forms required by section 657(c) of OSHA and of several other standard records through the enforcement of the Secretary's subpoena power is hardly unreasonable. *See United States v. Morton Salt Co., supra,* 338 U.S. at 653, 70 S.Ct. at 369. As the district court in *Marshall v. Olean Title Co., supra,* noted, "[t]he varied responsibilities delegated to the Secretary define the breadth of his subpoena power." 489 F.Supp. at 34. The Secretary is not only authorized to conduct full-scale investigations to ensure compliance with OSHA, he is also authorized to conduct more limited preliminary investigations to determine if a company meets the criteria established for a programmed inspection; criteria which, if met, suggest that further investigation may reveal violations of OSHA law. The demand for documents is specific, the records sought are primarily those the company is required to keep and make available under the statute, and the documents are necessary to a calculation of the company's lost workday injury rate. *See id.* at 35.

For all of the foregoing reasons, we find the subpoena is authorized and constitutionally permissible, and we affirm the district court's order enforcing it.