**NORTHEAST ERECTORS ASSO-
CIATION OF THE BTEA,
Plaintiff, Appellant,**

v.

**SECRETARY OF LABOR, OCCUPA-
TIONAL SAFETY & HEALTH ADMIN-
ISTRATION and its Boston Regional
Office, Defendants, Appellees.**

No. 94–2287.

United States Court of Appeals,
First Circuit.

Heard June 5, 1995.

Decided Aug. 15, 1995.

James F. Grosso with whom O'Reilly & Grosso, Southboro, MA, was on brief, for appellant.

Mark S. Flynn, Sr. Appellate Atty., with whom Thomas S. Williamson, Jr., Sol. of Labor, Allen H. Feldman, Associate Sol. for Sp. Appellate and Supreme Court Litigation, and Nathaniel I. Spiller, Counsel for Appellate Litigation, U.S.D. of Labor, Washington, DC, were on brief, for appellees.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and SCHWARZER, Senior District Judge.*

LEVIN H. CAMPBELL, Senior Circuit Judge.

Northeast Erectors Assoc. ("NEA") sued the Secretary of Labor, the Occupational Safety and Health Administration ("OSHA"), and OSHA's Boston regional office, for declaratory and injunctive relief. NEA sought to enforce an asserted oral agreement with the Boston regional office of OSHA, under which the office allegedly agreed not to enforce certain OSHA regulations. The district court dismissed for failure to state a claim. NEA now appeals. We affirm, although on a different ground.

### I.

NEA is an unincorporated association of contractors who perform structural steel and pre-cast concrete erection. The OSHA regulations at issue in this case establish standards designed to protect against falls of employees working in the construction industry and, particularly, of persons working in the steel erection industry. 29 C.F.R. § 1926.750(b)(1)(ii) is a regulation specifically targeted at the steel erection industry. It requires safety nets or safety lines to be installed when employees are exposed to a potential fall exceeding two stories or 25 feet. Similarly, 29 C.F.R. § 1926.105(a), which applies to the construction industry in general, requires safety nets or equivalent protection for workplaces 25 feet or more above the ground.

We accept NEA's allegations as true for the purposes of this appeal, Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). In October of 1989, a group of erection contractors and labor representatives met with John Miles, an OSHA regional administrator, and other OSHA representatives, to discuss OSHA's fall protection standards. During this meeting, the contractors told Miles that, for steel erection workers known as "connectors," compliance with the regulations was actually more hazardous than noncompliance. See Donovan v. Daniel Marr & Son Co., 763 F.2d 477, 479 (1st Cir.1985) (describing the type of work performed by connectors). OSHA representatives allegedly accepted this view and agreed that, until OSHA published a revised fall protection standard, they would not cite employers for not complying with the regulations with respect to workers who were "connectors."

From 1989 through April of 1994, regional OSHA representatives, allegedly in compliance with the "agreement," did not cite local steel erection contractors for noncompliance with the fall protection standards for "connectors." NEA argues that the agreement was breached in 1994 when the Deputy Assistant Secretary of OSHA sent a memorandum to all of the regional offices, directing them to cite employers who violated the fall provisions in 29 C.F.R. § 1926.105(a). The Boston regional office informed various contractors that it would now begin to issue such citations. NEA then brought this suit in the district court, seeking a declaration as to its rights and obligations under the oral agreement with the Boston regional office. NEA further sought an injunction restraining OSHA from issuing citations for violations of the fall protection standards until such time as OSHA issues new standards.

Defendants moved to dismiss for lack of subject-matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and failure to state a claim, Fed.R.Civ.P. 12(b)(6). Ruling from the bench, the district court dismissed NEA's complaint for failure to state a claim under Fed. R.Civ.P. 12(b)(6). The court held that, as a matter of law, the government could not be estopped from enforcing its regulations. It expressly did not rule on the issue of subject-matter jurisdiction. NEA now appeals.

---

* Of the Northern District of California, sitting by designation.

## II.

When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first. *See* 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1350, at 210 (1990); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").[1] It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state a claim. Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res judicata effect. *See* 2A James Moore, et al., *Moore's Federal Practice* ¶ 12.07, at 12–49 & n. 3 (1993).

We accordingly start—as well as end—with the jurisdictional issue, holding that the district court was without subject-matter jurisdiction over NEA's claim. The Occupational Safety and Health Act ("OSH Act") has an extensive administrative process for review of OSHA enforcement actions. After OSHA issues a citation, an employer may seek administrative review before the Occupational Safety and Health Review Commission ("OSHRC"). 29 U.S.C. § 659(c). Such challenges are first heard before an OSHRC administrative law judge, with discretionary review by OSHRC. 29 U.S.C. § 661(j). The employer may then seek judicial review of the OSHRC decision in the U.S. Court of Appeals, whose jurisdiction is "exclusive and [whose] judgment and decree shall be final," except for review by the Supreme Court. 29 U.S.C. § 660(a).

The OSH Act expressly authorizes the bringing of original actions in the U.S. District Court in only a few situations. None of these includes the bringing in the district court of pre-enforcement actions by employers. *See* 29 U.S.C. § 657(b) (actions by the Secretary to enforce administrative subpoenas); *id.* § 660(c)(2) (actions by Secretary to enforce the antidiscrimination provisions of the OSH Act); *id.* § 662(a), (d) (actions on behalf of Secretary to restrain imminent dangers); and *id.* § 666(*l* ) (actions on behalf of the U.S. to recover civil penalties). The administrative review scheme is thus ordinarily regarded as the exclusive procedure through which an employer can obtain review of OSHA enforcement proceedings. *See* 29 U.S.C. § 660(a); *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 385 (3d Cir.1987).

In *Thunder Basin Coal Co. v. Reich,* —— U.S. ——, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the Supreme Court held that a nearly identical, comprehensive· administrative review procedure under the Federal Mine Safety and Health Amendments Act, 30 U.S.C. § 801 *et seq.,* ("Mine Act"), revealed a congressional intent to preclude district courts from exercising subject-matter jurisdiction over *pre-enforcement,* as well as post-enforcement, challenges to the Act. In *Thunder Basin,* a mine operator, asked to comply with the provisions of the Mine Act, sought immediate injunctive relief from that request in district court, instead of waiting for a citation from the Mine Safety and Health Administration ("MSHA") and then challenging the citation through the Act's review scheme. The Court held that the district court was without jurisdiction to grant the requested relief.

Although the Mine Act did not expressly mention pre-enforcement challenges, the Court pointed to the detailed administrative review procedures established by the Act. After MSHA issues a citation, a mine operator may seek administrative review before

---

1. A different priority is followed in cases where the 12(b)(1) motion is based on the plaintiff's alleged failure to state a federal claim. (The idea being that, if the plaintiff failed to state a federal claim, there could be no federal question jurisdiction.) In such cases, the prevailing view is that, unless the claim is entirely frivolous, a court should assume jurisdiction and dismiss for failure to state a claim, since federal question jurisdiction exists once plaintiff has alleged even a colorable federal claim. *See Bell,* 327 U.S. at 682–83, 66 S.Ct. at 776. This case is distinguishable, however, insofar as defendants' jurisdictional argument is not based on the federal claim's lack of substantive merit, but upon an independent basis.

the Federal Mine Safety and Health Review Commission ("FMSHRC"). *Thunder Basin*, —— U.S. at ——, 114 S.Ct. at 775; 30 U.S.C. § 815(a), (d). Such challenges are heard before a FMSHRC administrative law judge, with discretionary review by FMSHRC. 30 U.S.C. § 823(d)(1), (2). The mine operator may then seek judicial review of the decision in the U.S. Court of Appeals, whose jurisdiction " 'shall be exclusive and . . . final' except for possible Supreme Court review." *Thunder Basin*, —— U.S. at ——, 114 S.Ct. at 777 (citing 30 U.S.C. § 816(a)(1)). The Act authorizes actions in the U.S. District Court only in a limited number of areas and only by the Secretary, not by mine operators. *Id.* (operators "enjoy no corresponding right but are to complain to the Commission and then to the Court of Appeals").

Pointing to the comprehensive review procedures, the Court held that a district court had no subject-matter jurisdiction to entertain a pre-enforcement challenge to the Act by a mine operator. The Mine Act's "comprehensive review process does not distinguish between pre- and post-enforcement challenges, but applies to all violations of the Act and its regulations." *Id.* The Court also pointed to the legislative history of the Act, which indicated that administrative review procedures were designed to be the exclusive mechanism through which mine operators were to obtain review of enforcement actions. The Court concluded that:

> Nothing in the language and structure of the Act or its legislative history suggests that Congress intended to allow [employers] to evade the statutory-review process by enjoining the Secretary from commencing enforcement proceedings, as petitioner sought to do here. To uphold the District Court's jurisdiction in these circumstances would be inimical to the structure and purpose of the . . . Act.

*Id.* at ——, 114. S.Ct. at 781.

This case falls squarely within the holding of *Thunder Basin.* We hold that the OSH Act's comprehensive administrative review

scheme precluded the district court from exercising subject- matter jurisdiction over the present estoppel-based pre-enforcement challenge. The administrative and judicial review procedures in the two acts are nearly identical. *Compare* 29 U.S.C. § 660(a) *with* 30 U.S.C. § 816(a)(1). Moreover, like the claim in *Thunder Basin,* the NEA's estoppel claim is "of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin,* —— U.S. ——, 114 S.Ct. at 779. If, indeed, the government has engaged in conduct which should prevent it from enforcing its regulation, there is no reason for the employer not to raise that issue as a defense during a challenge to a citation under the ordinary administrative review procedure. Such a defense would not be so "wholly collateral" to the OSH Act's review provisions, nor so outside OSHA's expertise, that it should be exempted from the OSH Act's review scheme. *See id.* at ——, 114 S.Ct. at 779.[2]

OSHA's decision would, moreover, be entitled to judicial review by a court of appeals. *See, e.g., Erie Coke Corp.,* 1992 OSH Dec. (CCH) ¶ 29,653 (O.S.H.R.C.) (no estoppel where no evidence that reliance on earlier OSHA position was reasonable or that Secretary engaged in affirmative misconduct), *aff'd sub nom., Reich v. OSHRC,* 998 F.2d 134 (3d Cir.1993). Nor do we think that the NEA or its membership suffers any substantial harm by being required to raise this issue in the first instance after one or more members are subject to a citation. *See Thunder Basin,* —— U.S. at ——– ——, 114 S.Ct. at 781–82. Allowing such claims to be raised initially in an injunctive proceeding in district court would subvert Congress's intent to have such claims reviewed through the OSH Act's detailed administrative procedure.

### III.

Because the district court lacked subject-matter jurisdiction over this case, we affirm the district court's dismissal on that ground

---

2. *Tierney v. Schweiker,* 718 F.2d 449 (D.C.Cir. 1983), upon which the NEA places principal reliance, is distinguishable as that case involved no comprehensive, statutory-review scheme governing review of administrative action. Accordingly, there could be inferred no congressional intent to foreclose other avenues of review.

and do not reach its decision on defendants' motion to dismiss for failure to state a claim.

*Affirmed.*