Robert REICH, Secretary of Labor,
Plaintiff–Appellee,

v.

Andrew MANGANAS and Manganas
Painting Company, Inc.,
Defendants–Appellants.

No. 94–3698.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1995.

Decided Nov. 27, 1995.

Edward Falkowski (argued and briefed), Barbara Werthmann, U.S. Department of Labor, Office of Solicitor, Washington, DC, for Plaintiff-Appellee.

Roger L. Sabo (argued and briefed), Schottenstein, Zox & Dunn, Columbus, OH, for Defendants-Appellants.

Before: JONES and DAUGHTREY, Circuit Judges; GIBSON,* District Judge.

DAUGHTREY, Circuit Judge.

The defendants-appellants, Andrew Manganas and Manganas Painting Co., Inc., appeal from an order mandating compliance with the terms of an administrative subpoena issued on behalf of the Occupational Safety and Health Administration. Before this court, the defendants contend that § 10(b) of the Occupational Safety and Health Act, 29 U.S.C. § 659(b), excuses such compliance while the employer is awaiting an administrative decision on earlier alleged violations of the Act. We conclude that the defendants read the protective language of § 10(b) too broadly and affirm the judgment of the district court in all respects.

## PROCEDURAL AND FACTUAL BACKGROUND

Andrew Manganas is the vice-president of Manganas Painting Co., Inc., a Pennsylvania corporation that contracted with the Ohio Department of Transportation to paint interstate highway bridges spanning the Little Miami River near Lebanon, Ohio. During the summer and early fall of 1993, the company conducted blasting operations at the site to prepare the bridges for repainting. As a result of those operations, employees of the company were exposed to high levels of lead. In fact, in late July 1993, a physician at the University of Pittsburgh Medical Center contacted OSHA to report his treatment of a Manganas employee suffering from excessive lead exposure as a result of working at the bridge site.

Subsequent investigations at the site by OSHA inspectors confirmed the fact that recently promulgated interim standards for lead exposure, 29 C.F.R. § 1926.62, were being violated by Manganas in its work. Before all administrative data collection and analysis regarding the matter could be completed, however, Manganas ceased its operations at the site for the duration of the 1993–1994 winter season. Nevertheless, on February 1, 1994, OSHA issued citations to the company for 30 "serious" violations and 18 "willful" violations of applicable regulations in 1993 and assessed penalties against the company totaling $1,319,850. Manganas disputed the allegations and, on February 17, 1994, filed a notice of contest with the Occupational Safety and Health Review Commission.

In March of 1994, OSHA sent correspondence to Manganas prior to the initiation of the abrasive blasting on the bridges scheduled for the spring and summer. In that letter, the agency requested from the company "written documentation which specifies what actions have been or will be taken to ensure that employees will not be exposed to imminent danger conditions during your 1994 abrasive blasting season." Furthermore, OSHA suggested that exposure of employees to such imminent danger conditions could be avoided by ensuring that workers exposed to airborne lead levels greater than 50 micrograms per cubic meter are protected by

---

* The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation.

"proper respirators," "an effective respirator program," and "proper respirator fit testing and training," and that employees with blood lead levels greater than 50 micrograms per deciliter "are receiving medical surveillance and medical removal protection in accordance with 29 C.F.R.1926.62(j) and (k)."

Manganas replied to the written request for information with a letter advising OSHA of the company's belief that the filing of a notice of contest to the allegations of 1993 violations "operates as a stay of any further proceedings to enforce this Act, including compliance." The company thus did not produce the information sought by OSHA.

In response, the agency issued an administrative subpoena duces tecum directing Andrew Manganas to appear on June 15, 1994, to provide the following information:

1) Air sampling for lead performed by or for the Manganas Painting Co., Inc. during 1994; 2) Sampling and analysis for lead and zinc protoporphyrin levels in the blood of persons who have worked for Manganas Painting Co., Inc. during 1994; 3) Fit testing of persons, who have worked for Manganas Painting Co., Inc., for respiratory protection; 4) The manufacturer, model number and type of respiratory protection being worn by each employee; 5) Training of employees concerning the donning, wearing, use, removal, cleaning and storage of respirators.

The subpoena was personally served upon Andrew Manganas on May 23, 1994, but he failed to appear as directed. OSHA then filed suit in district court seeking enforcement of its subpoena.

Before the district court, Manganas again argued that the provisions of 29 U.S.C. § 659(b) toll the running of the time period provided to correct OSHA violations "until the entry of a final order by the Commission in the case of any review proceedings under this section initiated by the employer in good faith and not solely for delay or avoidance of penalties." Consequently, the company contended, OSHA could not seek further information regarding the challenged violations during the pendency of the administrative proceedings.

The district court agreed with Manganas that OSHA was statutorily precluded from requiring the company to provide additional information relating to the alleged *1993* violations of the Act during the period in which the OSHRC was considering the contested matter. The court found, however, "that as far as the operation in *1994* is concerned, that the OSHA has an obligation and a duty and a statutory right to investigate conditions as they exist today." (Emphasis added.) The court thus ordered Manganas to comply with the subpoena, but limited the subpoena's applicability to "matters arising after March, 1994." It is from this order that the defendants now appeal.

### ANALYSIS

■ The Occupational Safety and Health Act was enacted explicitly "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). In furtherance of that goal, Congress provided:

Each employer shall make, keep and preserve, and make available to the Secretary ... such records regarding his activities relating to this chapter as the Secretary ... may prescribe by regulation as necessary or appropriate for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses.

29 U.S.C. § 657(c)(1). Furthermore, 29 U.S.C. § 657(b) states broadly, and without limitation, that "[i]n making his inspections and investigations under this chapter, the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath."

Manganas insists, however, that the Secretary's right to obtain such information or issue such subpoenas is limited by the provision in 29 U.S.C. § 659(b), which explains that the period permitted for *correction* of cited OSHA violations "shall not begin to run until the entry of a final order by the Commission in the case of any review proceedings under this section...." Because Manganas sought administrative review of the citations

issued to it regarding 1993 lead exposure violations at the Little Miami River bridge site, it now contends that OSHA is precluded from obtaining any further information from the company regarding work at the site in 1994, or in any subsequent year, until a final decision is rendered on the administrative challenge to the earlier alleged violations.

█ Generally, administrative subpoenas should be enforced if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant in purpose. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950); *McLaughlin v. Kings Island*, 849 F.2d 990, 993 (6th Cir.1988). Manganas does not contend that OSHA's subpoena in this case is too indefinite or that the information it seeks to obtain does not pertain to occupational safety and health matters. Rather, the company submits only that the provisions of 29 U.S.C. § 659(b) place such a request beyond the scope of the agency's authority.

█ In so arguing, Manganas erroneously equates the statutory moratorium on requiring corrective action with a ban on inspections and information-gathering. In fact, however, § 659(b)'s tolling of the time for an employer to undertake remedial procedures bears no relationship to the unrestricted statutory duty of an employer to "make, keep and preserve, and make available" information relating to "the causes and prevention of occupational accidents and illnesses," 29 U.S.C. § 657(c)(1), or to the broad powers of the Secretary to "require the attendance and testimony of witnesses and the production of evidence under oath," 29 U.S.C. § 657(b).

█ As noted by the Eighth Circuit, the Act "authorizes the use of the subpoena power, *independent of an inspection of the premises*, to obtain records the company is *required* to maintain. . . ." *Donovan v. Union Packing Co. of Omaha*, 714 F.2d 838, 840 (8th Cir.1983) (emphasis added). In fact, to conclude otherwise would be tantamount to granting OSHA-violators a freedom to ignore health and safety regulations that law-abiding companies are not permitted. Such disparate enforcement of applicable laws would also openly frustrate the stated purpose of OSHA legislation to assure safe, healthful work environments to "*every* working man and woman in the Nation."

Also militating against the defendants' argument in this appeal is the fact that the Secretary is *required* by the Act to petition the courts for the restraint of "any conditions or practices in *any* place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures provided" by statute. 29 U.S.C. § 662(a) (emphasis added). "If the Secretary arbitrarily or capriciously fails to seek relief under this section, any employee who may be injured by reason of such failure . . . might bring an action against the Secretary. . . ." 29 U.S.C. § 662(d). Given such circumstances, the mere filing of a notice of contest by an employer should not be interpreted so as to bar the Secretary either from protecting workers from "death or serious physical harm" or from fulfilling his continuing information-gathering and inspection responsibilities under the Act.

█ Manganas additionally argues that monitoring or inspection at the bridge site should not be permitted during the pendency of the administrative challenge to the earlier citations because OSHA's own Field Operation Manual forbids reinspections after a notice of contest has been filed. Section F.1(c)(6) of Chapter II of that document does provide that "[w]hen a citation is currently under contest, a follow-up inspection shall not be scheduled regarding the contested items." Internal operating manuals, however, do not carry the force of law, bind the agency, or confer rights upon the regulated entity. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981); *United States v. Will*, 671 F.2d 963, 967 (6th Cir.1982). Moreover, even if the manual were to bind OSHA, the cited provision refers only to follow-up *inspections* and makes no mention whatsoever of subpoenas for information similar to the request at issue in this appeal.

Finally, Manganas contends that the structure of the Act itself precludes further investigation and inspection by OSHA of the bridge site until the final resolution of the employer's contest of the earlier citations. According to the defendants' argument, 29 U.S.C. § 658(a) *requires* the Secretary to issue a citation to any employer who he, "upon inspection or investigation," believes has violated a requirement of the Act or of rules, orders, or regulations promulgated under the Act. Because § 659(b) provides, however, that the time for correcting a violation extends past the time of the final administrative order on the initial citations, Manganas insists that unless all OSHA investigations and inspections are forbidden until after that time, any information-gathering might result in uncovering additional violations for which the employer *must* be cited, even though corrective action cannot yet be required.

This final argument is also without merit. As noted previously, OSHA inspections and investigations have information-gathering components and need not necessarily result in discovery of violations. Furthermore, the inspections and investigations may reveal violations of the Act completely separate from the earlier cited transgressions. Significantly, even 29 U.S.C. § 659(b) does not, by its language, forbid issuance of subsequent citations for continuing violations; instead, the statutory provision merely provides an employer with an absolute defense to administrative sanctioning of the violation.

## CONCLUSION

Under 29 U.S.C. § 657, the Secretary is accorded broad subpoena powers. Moreover, his authority to issue such subpoenas in furtherance of his monitoring and information-gathering duties under the Act is not limited by 29 U.S.C. § 659(b)'s temporary stay-of-abatement provisions. Nevertheless, in order to ensure that OSHA's subpoena did not in any way infringe upon the limited protections offered by § 659(b), the district court in this matter took the additional precaution of limiting the agency's information request to a time period subsequent to the year relevant to the initial citations issued to Manganas. The subpoena issued by the Secretary, through OSHA, to the defendants thus sought information within the authority of the agency, was not indefinite, and required production of data reasonably relevant to an authorized inquiry. We therefore **AFFIRM** the order of the district court enforcing the administrative subpoena.