USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1918 UNITED STATES OF AMERICA, Petitioner, Appellee, v. STURM, RUGER & COMPANY, INC., Respondent, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ _________________________ Before Selya, Stahl and Lynch, Circuit Judges. ______________ _________________________ Richard D. Wayne, with whom Willard Krasnow, Lara ___________________ _________________ ____ SanGiovanni, and Hinckley, Allen & Snyder were on brief, for ___________ _________________________ appellant. Frederick D. Braid, Walter J. Johnson, Sharon N. Berlin, ___________________ __________________ _________________ Rains & Pogrebin, P.C., Daniel J. Popeo, and David A. Price on _______________________ _______________ _______________ brief for Washington Legal Foundation, amicus curiae. John Shortall, Attorney, United States Dep't of Labor, with _____________ whom Joseph M. Woodward and Ann Rosenthal, United States Dep't of __________________ _____________ Labor, Paul M. Gagnon, United States Attorney, and Gretchen Leah ______________ _____________ Witt, Assistant United States Attorney, were on brief, for ____ appellees. _________________________ May 14, 1996 _________________________ SELYA, Circuit Judge. On the surface this case appears SELYA, Circuit Judge. _____________ to touch a sensitive nerve: how the Occupational Safety and Health Act (OSH Act), 29 U.S.C. 651-678 (1994), interfaces with the field of ergonomics (the study and design of workplace environments and job tasks and their effects on employee health). Indeed, the respondent-appellant, Sturm, Ruger & Co. (Sturmco), and the amicus, the Washington Legal Foundation (WLF), deliberately frame the appeal in these terms; they entreat us to declare that the Occupational Safety and Health Administration (OSHA) lacks the authority to regulate ergonomics in the workplace through the medium of the OSH Act's general duty clause, id. 654(a)(1), and to reverse the district court's ___ order on that basis. We turn a deaf ear to these blandishments because close perscrutation of the record discloses that they are premature. This is no more than a run-of-the-mine administrative subpoena enforcement proceeding which presents no legitimate opportunity to dwell on cosmic truths. Deeming it unwise to make a long prologue and to be short in the story itself, cf. 2 Maccabees 2:32, we omit any ___ further introduction and proceed directly to the particulars. I. BACKGROUND I. BACKGROUND In August 1993 an OSHA representative arrived at Sturmco's factory in Newport, New Hampshire, to look into an employee complaint about air quality. But the visitor did more than test for air contaminants; he also informed Sturmco of a Local Emphasis Program (LEP) inaugurated by OSHA's area director. 2 The LEP identified certain New Hampshire employers, based on the incidence of particular types of workers' compensation claims filed with a state agency, whom the area director believed might have an unusually high number of employees afflicted with multiple movement disorders. The OSHA emissary reported that Sturmco had been so identified and requested that it voluntarily produce certain records detailing work-related injuries and illnesses. Sturmco complied. In November of the same year, the OSHA functionary returned to videotape employees engaged in one of Sturmco's manufacturing operations. He requested that the company complete a questionnaire that related to ergonomic issues at the factory. Sturmco took the matter under advisement and, in January, informed OSHA that it would not answer the questionnaire. OSHA then served a subpoena demanding that Sturmco produce a myriad of documents concerning manufacturing processes, employee training, and on-the-job injuries. The company fenced with the agency, saying that it would comply with the subpoena only in the event that OSHA agreed not to use any of the resultant information to impose punitive sanctions. Refusing to accede to this condition, OSHA invoked 29 U.S.C. 657(b) and obtained enforcement of the subpoena in the federal district court. See Reich v. Sturm, Ruger & Co., 903 F. Supp. 239 (D.N.H. ___ _____ __________________ 1995). Sturmco appeals. We affirm. II. SUBPOENA ENFORCEMENT II. SUBPOENA ENFORCEMENT Although the parties especially the respondent and 3 the amicus expend a great deal of energy debating the merits of ergonomic research and regulation, this exegesis is largely beside the point. The principal question before this court is much more mundane: did OSHA have the authority to issue the administrative subpoena? We hold that it did. A A An administrative subpoena is not self-executing and is therefore technically not a "search." It is at most a constructive search, amounting to no more than a simple direction to produce documents, subject to judicial review and enforcement. See Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 195 (1946); ___ _______________________ _______ In re Grand Jury Subpoena Served Upon Simon Horowitz, 482 F.2d _______________________________________________________ 72, 75-79 (2d Cir.), cert. denied, 414 U.S. 867 (1973). Thus, _____ ______ unlike the subject of an actual search, the subject of an administrative subpoena has an opportunity to challenge the subpoena before yielding the information. In the course of that resistance, the Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena. See Donovan v. ___ _______ Lone Steer, Inc., 464 U.S. 408, 415 (1984); see generally Jack ________________ ___ _________ W. Campbell IV, Note, Revoking the "Fishing License," 49 Vand. L. _______________________________ Rev. 395, 408-09 (1996). The requirements for enforcement of an administrative subpoena are not onerous.1 In order to obtain judicial backing  ____________________ 1We note that the subpoena at issue here seeks only corporate documents, and thus does not raise any of the concerns discussed in In re Subpoena of Roger Gimbel, 77 F.3d 593, 596-600 ______________________________ (2d Cir. 1996). 4 the agency must prove that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena. See United States v. Morton Salt Co., 338 U.S. 632, ___ _____________ _______________ 652 (1950); Oklahoma Press, 327 U.S. at 208; United States v. _______________ _____________ Comley, 890 F.2d 539, 541 (1st Cir. 1989). As long as the agency ______ satisfies these modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied. See Oklahoma Press, 327 U.S. at 208. These standards apply to ___ ______________ OSHA subpoenas in exactly the same way that they apply to subpoenas issued by other agencies. See, e.g., Reich v. ___ ____ _____ Manganas, 70 F.3d 434, 437 (6th Cir. 1995); Reich v. National ________ _____ ________ Eng'g & Contr'g Co., 13 F.3d 93, 98 (4th Cir. 1993); Dole v. ____________________ ____ Trinity Indus., Inc., 904 F.2d 867, 871 (3d Cir.), cert. denied, _____________________ _____ ______ 498 U.S. 998 (1990); Donovan v. Union Packing Co., 714 F.2d 838, _______ _________________ 840 (8th Cir. 1983). B B The respondent's central thesis boils down to this: the subpoena should not be enforced because OSHA issued it pursuant to an inspection scheme (the LEP) that did not derive from within OSHA's statutory authority. Sturmco casts this proposition in two modes. First, it focuses on the inspection scheme in the forlorn hope that we will apply to this subpoena the more stringent test applicable to administrative searches, namely, the requirement that on-site inspections be conducted 5 pursuant to "reasonable legislative or administrative standards." Marshall v. Barlow's, Inc., 436 U.S. 307, 320 (1978). ________ ______________ We will not dance to the respondent's tune. At present, OSHA is not seeking to conduct an inspection or any other physical search of Sturmco's premises, but, rather, merely to enforce a subpoena duces tecum.2 The Supreme Court has made it pellucid that subpoenas as opposed to inspections or other administrative searches are subject to the minimal standards of Oklahoma Press and its progeny, not to the more rigorous Barlow's ______________ ________ criteria. See Lone Steer, 464 U.S. at 414. Thus, to the extent ___ __________ that Sturmco's animadversions are directed at whether the LEP drew its essence from a reasonable administrative standard, they have no bearing on the question we must decide. C C In view of the frailty of its first asseveration, Sturmco's appeal necessarily stands or falls on its second argument, namely, whether issuing the subpoena was within OSHA's statutory authority. We think that it falls. 1. The Statutory Scheme. The OSH Act imposes two 1. The Statutory Scheme. _____________________ distinct duties on employers. First, employers must comply with specific workplace health and safety standards established by  ____________________ 2It is simply not true, as Sturmco seems to suggest, that OSHA may only issue subpoenas pursuant to inspections based on employee complaints. As the Eighth Circuit has observed: "The statute does not mandate an inspection of the premises in order to enforce a limited subpoena to determine whether there is a probable violation of the law. Indeed, the Secretary should not be expected to do more than the circumstances require." Union _____ Packing, 714 F.2d at 840 (citation omitted). _______ 6 OSHA. See 29 U.S.C. 654(a)(2). To this end, the Act grants ___ OSHA authority to promulgate such standards.3 See id. 655. ___ ___ Second, to fill whatever gaps may exist after rules delineating specific standards have been promulgated, the Act imposes on employers a general duty to provide "employment and a place of employment which are free from recognized hazards." Id.  ___ 654(a)(1). OSHA enforces this general duty clause, as it is called, through case-by-case adjudicative proceedings. See id.  ___ ___ 661(i) (establishing administrative adjudication mechanism); Puffer's Hardware, Inc. v. Donovan, 742 F.2d 12, 17 (1st Cir. _______________________ _______ 1984) (holding that the Secretary does not abuse his discretion by issuing citations in adjudicative proceedings under the general duty clause as opposed to establishing specific standards via rulemaking); see also Reich v. Montana Sulpher & Chem. Co., ___ ____ _____ ____________________________ 32 F.3d 440, 445 (9th Cir. 1994) (noting "OSHA's statutory obligation to enforce the general duty clause as a minimum standard"), cert. denied, 115 S. Ct. 1355 (1995); Matter of _____ ______ __________ Establishment Inspection of Kelly-Springfield Tire Co., 13 F.3d ________________________________________________________ 1160, 1167 (7th Cir. 1994) (acknowledging the Secretary's authority to enforce the general duty clause); UAW v. General ___ _______ Dynamics Land Sys. Div., 815 F.2d 1570, 1577 (D.C. Cir.) (limning _______________________ the standards OSHA must meet to prove a violation of the general  ____________________ 3Although OSHA has never established health and safety standards relating specifically to ergonomics, the agency at one point issued an advance proposed notice of rulemaking, requesting information and comments on ergonomics from interested parties. See 57 Fed. Reg. 34,192 (Aug. 3, 1992). OSHA has yet to ___ promulgate an official notice of proposed rulemaking adumbrating specific ergonomic standards. 7 duty clause), cert. denied, 484 U.S. 976 (1987). _____ ______ OSHA asserts as authority for the instant subpoena its power to investigate possible violations of the general duty clause. It is by now apodictic that enforcement of the general duty clause is a purpose properly authorized by Congress. See, ___ e.g., Montana Sulpher, 32 F.3d at 449; Kelly-Springfield, 13 F.3d ____ _______________ _________________ at 1166-67. 2. "Recognized Hazards". In an effort to make an end 2. "Recognized Hazards". ____________________ run around these holdings, Sturmco and WLF question the validity of OSHA's purpose by positing that ergonomic hazards are not "recognized hazards" within the purview of the general duty clause. This initiative features two decisions in which administrative law judges (ALJs) under the auspices of the Occupational Safety and Health Review Commission (OSHRC) refused to enforce citations for particular ergonomic hazards under the general duty clause. See Beverly Enters., Inc., OSHRC No. 91- ___ _____________________ 3344 (A.L.J. 1995); Pepperidge Farm, Inc., OSHRC No. 89-0265 ______________________ (A.L.J. 1993). Sturmco and WLF insist that these decisions show that OSHA lacks the rudimentary authority to regulate ergonomics under the general duty clause. In the absence of any more specific regulatory authority, they conclude, OSHA cannot demonstrate a proper purpose for the issuance of the instant subpoena. This conclusion is built on shifting sands. In the first place, neither of the cited ALJ decisions holds that OSHA lacks authority in all instances to regulate ergonomics under the ________________ 8 general duty clause.4 They therefore fail to provide convincing support for the proposition that OSHA will not be able to prove a violation of the general duty clause in this case. In the second place and more important the respondent's argument misconstrues the scope of the judicial inquiry that is appropriate at this stage. We have repeatedly admonished that questions concerning the scope of an agency's substantive authority to regulate are not to be resolved in subpoena enforcement proceedings. See FTC ___ ___ v. Monahan, 832 F.2d 688, 690 (1st Cir. 1987), cert. denied, 485 _______ _____ ______ U.S. 987 (1988); FTC v. Swanson, 560 F.2d 1, 2 (1st Cir. 1977) ___ _______ (per curiam); SEC v. Howatt, 525 F.2d 226, 229-30 (1st Cir. ___ ______ 1975). Subpoena enforcement proceedings are designed to be summary in nature, see Comley, 890 F.2d at 541, and an "agency's ___ ______ investigations should not be bogged down by premature challenges to its regulatory jurisdiction," Swanson, 560 F.2d at 2. As long _______ as the agency's assertion of authority is not obviously apocryphal, a procedurally sound subpoena must be enforced. See ___ id.; see also EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 923 ___ ___ ____ ____ ____________________ (11th Cir. 1991). Refined to bare essence, the respondent's argument runs  ____________________ 4Both decisions are presently on review before OSHRC. In any event, because the cases are merely first-tier ALJ decisions, they are entitled to no precedential value before this tribunal. See Matter of Establishment Inspection of Cerro Copper Prods. ___ ____________________________________________________________ Co., 752 F.2d 280, 284 (7th Cir. 1985) (per curiam) ("An ___ unreviewed ALJ decision does not bind OSHRC or the courts as precedent.") (citing cases). Their utility depends solely on the persuasive power, if any, of their reasoning. 9 along the following lines. As part of its burden of proving a violation of the general duty clause, OSHA must show that an employer failed to keep its workplace free of a recognized hazard that caused (or was likely to cause) death or serious physical injury. See General Dynamics, 815 F.2d at 1577; Puffer's ___ _________________ ________ Hardware, 742 F.2d at 18. Ergonomic hazards, Sturmco argues, are ________ not such "recognized hazards," and, therefore, OSHA cannot carry its burden. Given the early stage of the proceedings, this argument falters. To be sure, a debate rages in both legal and medical circles over the dangers posed by, for example, multiple movement disorders, as well as over the optimum method(s) by which so- called ergonomic dangers can be alleviated. But uncertainties of this sort do not provide a cognizable basis for concluding at __ this stage that OSHA would not be able to issue a citation. This __________ is especially true when, as now, a subpoena is "designed to produce the very information that may be needed to shed light upon those questions." Howatt, 525 F.2d at 230. ______ 3. A Variation on the Theme. WLF comes at the problem 3. A Variation on the Theme. ________________________ from another angle. It asserts that once a subpoena is enforced the chance for an effective challenge evaporates because most employers are likely to settle with OSHA rather than proceed through the rigors of the administrative litigation process. As an initial matter, we doubt that this argument is properly before us. While amicus briefs are helpful in assessing litigants' positions, an amicus cannot introduce a new argument into a case. 10 See Lane v. First Nat'l Bank, 871 F.2d 166, 175 (1st Cir. 1989) ___ ____ ________________ (explaining that an amicus may not "interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore"); accord Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 36 ______ _________________ _________ (1st Cir. 1993). In all events, WLF's argument fails on the merits. It offers no empirical or statistical evidence in support of its conclusions about settlement rates. Moreover, it points to no case holding that the prospective burden of litigation constitutes a cognizable injury sufficient to breathe life into a pre-enforcement challenge to agency action notwithstanding the guaranteed availability of judicial review following final agency action. Put bluntly, WLF asks us to buy a pig in a poke, and we refuse to do so. At any rate, we have already rejected a similar argument in repudiating an estoppel-based collateral attack on an OSHA citation. In Northeast Erectors Ass'n v. Secretary of __________________________ _____________ Labor, 62 F.3d 37 (1st Cir. 1995), we held that a party did not _____ suffer substantial harm from being required to raise defenses to a citation only after the citation had issued. See id. at 40. ___ ___ We also warned that permitting parties to circumvent the administrative process by bringing collateral challenges in the district court would "subvert Congress's intent to have such claims reviewed through the OSH Act's detailed administrative procedure." Id. ___ 4. Recapitulation. We need go no further. OSHA's 4. Recapitulation. ______________ 11 authority to investigate ergonomic conditions in search of possible general duty clause violations easily passes the undemanding test for the enforceability of administrative subpoenas. Were we to succumb to the siren song that Sturmco sings and stop the subpoena for want of some sophisticated standard for systemically specifying ergonomic hazards, we would in effect be requiring OSHA to "charge first and investigate later." Montana Sulpher, 32 F.3d at 444. This tergiversation _______________ would stand the administrative enforcement process on its head and in the bargain would both defy the will of Congress and ignore the teachings of the Court. We will not encourage so resupinate an exercise. D D We must attend to a final detail. While the respondent does not seriously contend that the documents requested in the subpoena are irrelevant to OSHA's asserted purpose or that the subpoena was issued in a procedurally irregular manner, it does attempt to argue that enforcement should be withheld because the subpoena is abusive and overbroad. On appeal, Sturmco's sole stated basis for this contention is that, because there is no ergonomic standard or definition of ergonomic hazard, any document request must necessarily be abusive. This is nothing more than a cross-dressing of the argument, previously rejected, that OSHA lacks authority to issue a subpoena pursuant to an investigation of ergonomic hazards for possible violations of the general duty clause. We can conceive of no reason to give this 12 importuning further attention. Accordingly, the subpoena must be enforced. III. CITATION ENFORCEMENT III. CITATION ENFORCEMENT In July of 1994, while the respondent was in the midst of contesting the subpoena's validity, OSHA issued a citation charging the company with failure to produce certain subpoenaed documents. The respondent requested that the district court prohibit enforcement of the citation. The court refused, citing a perceived lack of jurisdiction. See Sturm, Ruger, 903 F. Supp ___ ____________ at 250. As the district court recognized, id. at 249-50, it is ___ questionable whether OSHA citations issued for failure to comply with a subpoena that the employer is in the process of challenging may be enforced. See, e.g., Lone Steer, 464 U.S. at ___ ____ ___________ 415 (explaining that an employer may "question the reasonableness of [a] subpoena, before suffering any penalties for refusing to ________________________________________________ comply with it, by raising objections in an action in the ________________ district court") (emphasis supplied); See v. City of Seattle, 387 ___ _______________ U.S. 541, 544-45 (1967) (similar); Brock v. Emerson Elec. Co., _____ __________________ 834 F.2d 994, 997 (11th Cir. 1987) (similar). But as the district court also recognized, Sturm, Ruger, 903 F. Supp. at _____________ 250, the law lodges exclusive jurisdiction over challenges to the validity of citations with OSHRC, subject to review by the court of appeals. See 29 U.S.C. 659(c) & 660(a); see also Northeast ___ ___ ____ _________ Erectors, 62 F.3d at 39-40 (explaining jurisdictional structure ________ of OSH Act and holding that the district court lacked subject 13 matter jurisdiction over a pre-enforcement challenge to an OSHA citation). The OSH Act provides only a few limited bases for original jurisdiction in the district court, and none of those bases exists here. The administrative review and appeals process thus remains "the exclusive procedure through which an employer can obtain review of OSHA [citation] enforcement proceedings." Northeast Erectors, 62 F.3d at 39.5 Consequently, the district __________________ court did not err in refusing, on jurisdictional grounds, to entertain Sturmco's complaint anent the citation. IV. CONCLUSION IV. CONCLUSION There is much less to this appeal than meets the eye. Because OSHA had authority to issue the subpoena to investigate possible violations of the general duty clause, we must affirm the judgment below. In so doing, we leave for another day the question whether OSHA will ultimately be able to enforce a citation against Sturmco (or anybody else, for that matter) on the ground that ergonomic hazards are recognized hazards within the meaning of the OSH Act's general duty clause. Affirmed. Affirmed. ________  ____________________ 5Sturmco is currently contesting the citation before OSHRC, and it will be entitled to all appropriate defenses against enforcement there and on any ensuing appeal. See, e.g., Emerson ___ ____ _______ Elec., 834 F.2d at 997 (affirming OSHRC's vacation of citation _____ issued for failure to produce documents). That route is the only available avenue of protest vis-a-vis the citation. 14